**PILLOWTEX CORPORATION, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 98–1227.

United States Court of Appeals, Federal Circuit.

March 16, 1999.

Margaret R. Polito, Neville, Peterson & Williams, of New York, New York, argued for plaintiff-appellant. With her on the brief was John M. Peterson.

Mikki Graves Walser, Attorney, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, of New York, New York, argued for defendant-appellee. With her on the brief were David M. Cohen, Director, of Washington, DC, and Joseph I. Liebman, Attorney in Charge, of New York, New, York. Of counsel on the brief was Beth C. Brotman, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, of New York, New York.

Paul C. Rosenthal, Collier, Shannon, Rill & Scott, PLLC, of Washington, DC, for amicus curiae Pacific Coast Feather Company, Inc. With him on the brief was John B. Brew.

Before RICH, PLAGER, and RADER, Circuit Judges.

PLAGER, Circuit Judge.

Pillowtex Corporation ("Pillowtex") appeals from the judgment[1] of the United States Court of International Trade. That court sustained the classification by the United States Customs Service ("Customs") of Pillowtex's cotton-covered down comforters under subheading 9404.90.90 of the Harmonized Tariff Schedule of the United States[2] ("HTSUS"). Because we

---

1. *Pillowtex Corp. v. United States,* 983 F.Supp. 188 (Ct. Int'l Trade 1997).

2. Unless otherwise indicated, all references to the HTSUS are to the 1994 version.

hold that the Court of International Trade did not erroneously classify the subject merchandise, we affirm.

## BACKGROUND

The merchandise at issue is comforters with 100% cotton outer shells that are stuffed with white duck down. The outer shells of the comforters do not have any detail work such as embroidery.

Heading 9404 of the HTSUS provides in pertinent part:

9404   Mattress supports; articles of bedding and similar furnishings (for example, mattresses, quilts, eiderdowns, cushions, pouffes and pillows) fitted with springs or stuffed or internally fitted with any material or of cellular rubber or plastics, whether or not covered:

\*    \*    \*    \*    \*    \*

9404.90   Other:

\*    \*    \*    \*    \*    \*

9404.90.80   Other:

Of cotton, not containing any embroidery, lace, braid, edging, trimming, piping exceeding 6.35 mm or applique work.

9404.90.90   Other.

Under subheadings 9404.90.80 and 9404.90.90 are statistical suffixes that contain the following language: "Quilts, eiderdowns, comforters and similar articles:...." In addition, following that language in the statistical suffix of subheading 9404.90.90 is the phrase: "With outer shell of cotton."

In a final interpretive rule,[3] Customs classified down comforters with 100% cotton shells under subheading 9404.90.90, which provided for a duty at a rate of 14.5% *ad valorem*. In its ruling, Customs reasoned that its prior classification of such down comforters under subheading 9404.90.80, which carried a duty of 5% *ad valorem*, was erroneous because the essential character of the comforters is the down filling, not the cotton outer shell.

Appellant Pillowtex challenged the new classification by Customs in an action before the Court of International Trade, arguing that its down comforters should be classified under subheading 9404.90.80 rather than 9404.90.90.

Under several separate lines of reasoning, the Court of International Trade sustained Customs's classification of Pillowtex's comforters under subheading 9404.90.90.

The Court of International Trade first examined the common and commercial usage of the phrases "comforter of cotton" and "cotton comforter." The trial court found that testimony established that those phrases describe comforters stuffed with cotton. In addition, the trial court found that the term "of cotton," when used to describe a comforter, does not include in common or commercial parlance a down-filled comforter. Deciding that the subject merchandise was not within the common meaning of the phrase "comforter of cotton," the trial court rejected Pillowtex's argument that its down comforters fall under the "of cotton" subheading, HTSUS 9404.90.80.

The trial court next examined the wording of the substantive subheadings under HTSUS 9404. The trial court reasoned that the subject comforter could only be *prima facie* classifiable under subheading 9404.90.90, the final basket clause in heading 9404, because that subheading, according to the trial court, necessarily includes merchandise that is described by heading 9404 but not by any of the subheadings besides 9404.90.90.

The trial court further reasoned that the General Rules of Interpretation ("GRI") also confirm that the cotton-covered down comforters at issue should be classified under 9404.90.90. According to the trial court, GRI 2(b) provides that the "essential character" analysis of GRI 3(b) may be applied whenever the goods at issue consist of more than one material or sub-

---

**3.**   59 Fed.Reg. 13,452 (March 22, 1994).

stance. Although the language of GRI 3 limits the application of the "essential character" analysis to situations where the goods at issue are *prima facie* classifiable under two or more headings, the trial court nonetheless applied that analysis to the subject merchandise that it had already concluded was *prima facie* classifiable under only one heading. The trial court found that the "essential character" of the comforters at issue is their insulating quality, which is imparted by the down filling, not the cotton shells. Under this line of reasoning, the trial court also confirmed its conclusion that the down comforters are properly classified under subheading 9404.90.90.

On appeal, Pillowtex argues that the trial court incorrectly classified the down comforters. Pillowtex asserts that the trial court improperly considered the "common meaning" of the term "of cotton" because that tariff term is clearly defined by the terms of headings and the GRIs. In addition, Pillowtex argues that the trial court should not have applied the "essential character" provision of GRI 3(b) because the goods are not *prima facie* classifiable under two headings. Pillowtex also argues that the phrase "stuffed or internally fitted with any material" from the heading 9404 should be given effect as though set forth in subheading 9404.90.90. Furthermore, Pillowtex argues that since Congress intended the HTSUS to be revenue-neutral, under the HTSUS comforters cannot be assessed a duty rate that is higher than the duty rate for comforters under the prior Tariff Schedule for the United States.

## DISCUSSION

■ Determining whether imported merchandise has been properly classified under an appropriate tariff provision is ultimately a question of law over which this court exercises complete and independent review. *See Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir.1998); *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1391 (Fed.Cir.1994). Resolution of that issue entails a two-step

process: (1) ascertaining the proper meaning of specific terms in the tariff provision; and (2) determining whether the merchandise at issue comes within the description of such terms as properly construed. *See Bausch & Lomb*, 148 F.3d at 1365. The first step is a question of law over which this court exercises complete and independent review. *See id.* The second step is a question of fact which this court reviews for clear error. *See id.*

### I.

■ Pillowtex contends that the trial court incorrectly classified the down comforters because it improperly considered the "common meaning" of the term "of cotton." According to Pillowtex, that tariff term is clearly defined by the terms of heading 9404 and subheading 9404.90.90, by GRIs 1 and 2(b), and Additional U.S. Rule of Interpretation 1(d). As explained below, contrary to Pillowtex's assertion, the term "of cotton" is not defined by heading 9404, subheading 9404.90.90, or any of the interpretive rules.

■ It is a general rule of statutory construction that where Congress has clearly stated its intent in the language of a statute, a court should not inquire further into the meaning of the statute. *See Brookside Veneers, Ltd. v. United States*, 847 F.2d 786, 788 (Fed.Cir.1988). Accordingly, GRI 1 recognizes that the first step in analyzing the classification issue is to examine the terms of the headings and any relevant section or chapter notes. *See Mita Copystar Am. v. United States*, 160 F.3d 710, 712 (Fed.Cir.1998). Thus, to determine if Congress has clearly stated its intent for the tariff term "of cotton," we must analyze the language of the provision at issue.

Heading 9404 encompasses "[m]attress supports; articles of bedding and similar furnishings." There is no dispute that comforters do fall under this heading since they are similar to the examples listed in the heading language: "for example, mat-

tresses, quilts, eiderdowns, cushions, pouffes and pillows." However, nothing in the language of the heading sheds any light onto the definition of the term "of cotton."

■ Neither subheading 9404.90.80 nor 9404.90.90 explicitly lists comforters by name and hence do not offer an explanation of what are comforters "of cotton." However, the statistical suffixes under both subheadings do explicitly list comforters by name. One statistical suffix under subheading 9404.90.90 even specifically creates a category for items, including comforters, with outer shells of cotton. Thus, at first glance, it would seem that comforters with outer shells of cotton should be classified under subheading 9404.90.90. However, classification of merchandise should not be based upon the wording of statistical suffixes, because statistical annotations, including statistical suffixes, are not part of the legal text of the HTSUS. *See* HTSUS Stat. Notes 2(a), 2(b); *see also Pima Western, Inc. v. United States*, 915 F.Supp. 399 (Ct. Int'l Trade 1996). Therefore, further examination of the legal text of the HTSUS must be conducted to determine the proper classification of the subject merchandise.

Since comforters are articles of bedding stuffed with some kind of material, it is clear that comforters, whether they have outer shells of cotton or otherwise, fall under heading 9404. Examining the language of the subheadings of heading 9404, it is also clear that none of the subheadings explicitly name comforters of any type – comforters "of cotton" or otherwise. Thus, the language of heading 9404 does not provide any insight into the meaning of the term "of cotton" as it relates to comforters.

Explanatory Note 94.04, like the language of the subheadings of heading 9404, also does not shed any light on the meaning of the term "of cotton" as it relates the comforters. That note merely confirms that comforters do fall under heading 9404, but does not indicate under which subheading comforters should be classified.

Furthermore, contrary to Pillowtex's contention, Additional U.S. Rule of Interpretation 1(d) is not helpful. That rule concerns mixtures of two or more textile materials. The only textile material in the comforters at issue is a 100% cotton outer shell. Thus, Rule 1(d) is not applicable.

In addition, there is no mention of the term "of cotton" in any of the General Rules of Interpretation. Thus, the GRIs also fail to offer any insight into the meaning of the term "of cotton."

Plainly, "of cotton" is not clearly defined, as Pillowtex contends, by the terms of heading 9404, any subheading of heading 9404, the Explanatory Note to that heading, an Additional U.S. Rule of Interpretation, or any of the General Rules of Interpretation. Thus, Congress has not clearly stated its intent for the tariff term "of cotton."

■ When a tariff term is not defined in the HTSUS or its legislative history, the term's correct meaning is its common meaning. *See Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed.Cir. 1994). Thus, the trial court correctly considered evidence to determine the common meaning of the term "of cotton" as it relates to comforters.

We find no error in the trial court's conclusion that testimony established that the common meaning of a comforter "of cotton" is a comforter stuffed with cotton, not stuffed with other material such as down.

## II.

■ To aid in the classification of merchandise, we turn to the General Rules of Interpretation. The structure of the GRI controls the point at which each rule comes into play. *See Mita Copystar*, 160 F.3d at 712. As GRI 1 expressly provides, the other GRI provisions may be consulted only if the headings and notes "do not otherwise require" a particular classification. *Id.* Thus, we first examine if the

headings and notes require a particular classification.

Subheading 9404.90.80 covers bedding articles that are not mattresses, pillows, or sleeping bags, but are "of cotton." The subject comforters are bedding articles that are not mattresses, pillows, or sleeping bags but have an outer shell of cotton. Since a part of the subject comforters, namely their outer shells, are composed of cotton, they *prima facie* fall under the "of cotton" provision, subheading 9404.90.80.

Subheading 9404.90.90 covers articles of bedding other than mattress supports (subheading 9404.10.00); mattresses (subheadings 9404.21.00, 9404.29.10 and 9404.29.90); sleeping bags (subheadings 9404.30.40 and 9404.30.80); other items such as pillows, cushions, and similar furnishings (subheadings 9404.90.10, 9404.90.20); and other items of cotton not containing any embroidery (subheading 9404.90.80). The subject comforters are not mattress supports; mattresses; sleeping bags; or other items such as pillows, cushions, and similar furnishings. In addition, the subject comforters are not items of cotton since they contain an inner filling of down, a material different from cotton. Thus, the comforters at issue also *prima facie* fall under the "other" provision, subheading 9404.90.90.

Consequently, the language in heading 9404, its subheadings headings, and associated notes indicate that the comforters at issue do fall under heading 9404, but do not clarify under which subheading, 9404.90.80 or 9404.90.90, the comforters should be classified. Having exhausted the headings and the notes, pursuant to GRI 1, we may now consider the next GRI provision, GRI 2.

GRI 2(b) provides:

Any reference in a heading to a material or substance shall be taken to include a reference to mixtures or combinations of that material or substance with other materials or substances. Any reference to goods of a given material or substance shall be taken to include a reference to goods consisting wholly or partly of such material or substance. The classification of goods consisting of more than one material or substance shall be according to the principles of rule 3.

Thus, according to the first sentence of GRI 2(b), subheading 9404.90.80, which contains the term "of cotton," is considered to cover articles of bedding and similar furnishings that are a combination of materials, as long as one of the materials is cotton. The comforters at issue consist of cotton outer shells and white down stuffing. Therefore, GRI 2(b) re-affirms that the subject comforters *prima facie* fall under subheading 9404.90.80.

GRI 2(b) also directs that the principles of GRI 3 should be used to classify articles consisting of more than one material, such as the subject comforters. Rule 3 provides, in relevant part:

"When ... goods are, *prima facie,* classifiable under two or more headings, classification shall be effected as follows:

(a) The heading which provides the most specific description shall be preferred to headings providing a more general description. However, when two or more headings each refer to part only of the materials or substances contained in mixed or composite goods ..., those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods.

(b) Mixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale, which cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable.

As explained above, the subject merchandise *prima facie* falls under subheadings 9404.90.80 and 9404.90.90. The cotton outer shell part of the subject comforters

allow the comforters to fall under subheading 9404.90.80, whereas the down filling part of the subject comforters allow them to fall under subheading 9404.90.90. Because these two subheadings only refer to part of the materials contained in the composite merchandise, pursuant to GRI 3(a), the subheadings are to be regarded as equally specific. Therefore, we progress to GRI 3(b) to determine under which of the two subheadings the subject comforters should be classified.

GRI 3(b) provides that goods that cannot be classified by reference to GRI 3(a) shall be classified as if they consisted of the material which gives them their "essential character." The trial court took evidence on the common meaning of cotton comforter and down comforter and found that the "essential character" of a comforter is the filling. We discern no clear error in that finding. Thus, the comforters at issue should be classified, pursuant to GRI 3(b), as if they consisted of down filling, not of cotton. Therefore, the comforters at issue are properly classified under the "other" subheading, 9404.90.90, which, *inter alia*, covers goods that are not "of cotton."

■ Pillowtex argues that the trial court incorrectly analyzed the matter when it determined that the subject comforters are not *prima facie* classifiable under 9404.90.80 and thus improperly applied the GRIs. The reader unfamiliar with the convoluted method the law uses to decide these cases might wonder why the judges strain so hard to determine something any consumer of comforters could tell them – a down comforter is not a comforter made of cotton. Be that as it may, the trial court did correctly determine that the subject down comforters fall under subheading 9404.90.90. Since the trial court reached the correct result, mis-steps in its reasoning in arriving there are harmless errors.

### III.

We have fully considered Pillowtex's remaining arguments that the subject down comforters should be classified under sub-heading 9404.90.80 and find them unpersuasive.

### CONCLUSION

Because the Court of International Trade correctly classified the subject down comforters under subheading 9404.90.90, we affirm.

*AFFIRMED.*