**Slip Op. 02-55**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: HON. RICHARD W. GOLDBERG, SENIOR JUDGE**

| | |
|---|---|
| BECKER GLOVE INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Court No. 02-00278 |

[The subject merchandise is properly classified under HTSUS 6117.80.85.]

Dated: June 18, 2002

<u>Neville Peterson LLP</u> (<u>John M. Peterson</u> and <u>Curtis Knauss</u>) for plaintiff Becker Glove International, Inc.

<u>Robert D. McCallum, Jr.</u>, Assistant Attorney General, <u>John J. Mahon</u>, Acting Attorney in Charge, <u>Harry A. Valetk</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice for defendant.

**OPINION**

**GOLDBERG, Senior Judge:** This case involves the proper classification of knit polyester fleece headbands imported from the People's Republic of China. Plaintiff Becker Glove International, Inc. ("Becker Glove") imported the subject merchandise under subheading 6117.80.85 of the Harmonized Tariff Schedule of the United States (2002) ("HTSUS"). The United States Customs Service ("Customs") asserts that the proper classification of the subject merchandise is HTSUS 6117.80.9540.

Although the tariff rate is the same under either subheading, under Customs' proposed classification the merchandise would be subject to quota restrictions and Becker Glove would be forced to obtain a textile quota category 659-O visa in order to enter the headbands into the United States.

The parties filed a Stipulation with this Court, dated June 4, 2002, wherein they agreed that the sole issue presented in this case is whether Customs properly classified the subject merchandise under HTSUS 6117.80.9540. Because the parties have agreed to submit this action for decision based on the Stipulation alone, rather than submitting additional briefs or proceeding to trial, the Court treats the Stipulation as cross-motions for summary judgment under U.S.C.I.T. R. 56.

### Background

The knit polyester fleece headbands, SKU nos. 84678-00765, 84678-00766, 84678-00767, 84678-00768, and 84678-00770 (collectively "subject merchandise"), were imported as one entry at the port of St. Louis, Missouri, on February 5, 2002. Becker Glove classified the subject merchandise upon importation under HTSUS subheading 6117.80.85, "[h]eadbands, ponytail holders and similar articles." Customs released the merchandise to Becker Glove, but later issued Becker Glove a Customs Form 4647 Notice to Redeliver the subject merchandise, indicating that the proper classification of the subject merchandise was HTSUS 6117.80.9540,

the residual "other" category, and that it was therefore subject to visa requirements. Becker Glove filed a protest on February 28, 2002. The Port Director of Customs for the Port of St. Louis, Missouri, denied Becker Glove's protest on March 20, 2002. Becker Glove timely commenced this action in the Court of International Trade on April 8, 2002, to challenge the denial of its protest.

## **Discussion**

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (2000). The question of proper classification in this case is a question of law, over which the Court exercises *de novo* review. See 28 U.S.C. § 2640 (2000). Under the Supreme Court's recent decision in Mead Corp. v. United States, 533 U.S. 218, 234-35 (2001), the Court affords deference to Customs' classification according to its "'its writer's thoroughness, logic, and expertness, its fit with prior interpretations, and any other sources of weight.'" Rockenel Fastener, Inc. v. United States, 267 F.3d 1354, 1357 (Fed. Cir. 2001) (quoting Mead, 533 U.S. at 235).

Four previous New York Customs rulings, Nos. B85343, C87769, F81830, and G89526, were submitted to the Court. All describe similar headbands to those at issue in this case, and in each instance Customs classified the headbands under HTSUS 6117.80.9540, noting that the function of the headbands was to

provide warmth.

After reviewing the HTSUS, the Stipulation, and submitted exhibits, the Court finds that the subject merchandise is properly classified under HTSUS 6117.80.85, as "[h]eadbands, ponytail holders and similar articles." The parties agree that the subject merchandise falls under heading 6117, HTSUS, "[o]ther made up clothing accessories, knitted or crocheted; knitted or crocheted parts of garments or of clothing accessories." However, Customs contends that the subject merchandise must be classified under the residual "[o]ther" category, HTSUS heading 6117.80.9540, because the subject merchandise is intended to provide warmth.

Subheading 6117.80.85 encompasses the *eo nomine* designation of "headbands," but that term is not defined in the HTSUS or the legislative history. See Pillowtex Corp. v. United States, 171 F.3d 1370, 1373 (Fed. Cir. 1999). Therefore, the Court will construe the term "headbands" according to its common and popular meaning. Id. The Court may rely on its own understanding, dictionaries, and other reliable sources to ascertain the common meaning of the term. See Brookside Veneers v. United States, 6 Fed. Cir. (T) 121, 125, 847 F.2d 786, 789 (1988). The Court understands the term "headband" to include the subject merchandise. Also, the parties stipulate that the subject merchandise "is known commonly and commercially as 'headbands,'"

Stipulation at 3, so that headbands with the purpose of providing warmth are within the common meaning of "headbands." See Stipulation at 3. "'[A]n *eo nomine* designation, with no terms of limitation, will ordinarily include all forms of the named article.'" Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed. Cir. 1999) (quoting Hayes-Sammons Chem. Co. v. United States, 55 C.C.P.A. 69, 75 (1968)). Therefore, the Court finds that the term "headband" in HTSUS 6117.80.85 does not exclude headbands designed to provide warmth.

Because the *eo nomine* provision of HTSUS 6117.80.85 includes "headbands," and the subject merchandise is commonly and commercially known as headbands, the proper classification of the subject merchandise is HTSUS 6117.80.85. Judgment must therefore be entered in plaintiff's favor.

_____

**Richard W. Goldberg**
SENIOR JUDGE

Date:     **June 18, 2002**
          New York, New York.