Slip Op. 02-57

UNITED STATES COURT OF INTERNATIONAL TRADE

————————————————————— :

THE POMEROY COLLECTION, INC.,

               :

               *Plaintiff,*

               :

            v.                       Court No. 99-02-00096

               :

UNITED STATES,

               :

               *Defendant.*

————————————————————— :

[Plaintiff's motion for summary judgment denied, Defendant's cross-motion for summary judgment granted, and action dismissed.]

Decided: June 19, 2002

    Fitch, King and Caffentzis (Peter J. Fitch), for Plaintiff.

    Robert D. McCallum, Jr., Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Bruce N. Stratvert); Beth C. Brotman, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, Of Counsel; for Defendant.

**OPINION**

RIDGWAY, Judge:

    This case is before the Court on cross-motions for summary judgment. Plaintiff Pomeroy Collection, Inc. ("Pomeroy") challenges the decision of the United States Customs Service ("Customs") denying Pomeroy's protests concerning the tariff classification of certain merchandise imported from Mexico in 1997 and described on the invoice as "Medium Romano Floor Lamps Rustic." Customs classified the merchandise as decorative glass articles – specifically, "[g]lassware

of a kind used for . . . indoor decoration or similar purposes," under subheading 7013.99.90 of the

Harmonized Tariff Schedule of the United States ("HTSUS") (1997) – and assessed duties at the rate

of 5.2% *ad valorem*. Pomeroy contends that the goods instead are properly classifiable as "[o]ther

articles of glass," under subheading 7020.00.60, HTSUS, and are thus duty-free.[1]  Complaint ¶ 5.[2]

Jurisdiction lies under 28 U.S.C. § 1581(a) (1994). Customs' classification decisions are

subject to *de novo* review pursuant to 28 U.S.C. § 2640 (1994). For the reasons discussed below,

Customs properly classified the subject merchandise as decorative glass articles, under subheading

7013.99.90, HTSUS. Accordingly, Pomeroy's motion for summary judgment is denied, and the

Government's cross-motion is granted.

---

[1]Specifically, subheading 7013.99.90 covers "[g]lassware of a kind used for table, kitchen, toilet, office, indoor decoration or similar purposes (other than that of heading 7010 or 7018): Other glassware: Other: Other: Other: Valued over $3 each: Other: Valued over $5 each." Subheading 7020.00.60 covers "[o]ther articles of glass: Other."

Both the classified and claimed tariff provisions in this case are properly preceded by the prefix "MX," to indicate that the goods qualify for the duty rate applicable to products of Mexico. *See* Plaintiff's Memorandum In Support of Its Motion For Summary Judgment ("Plaintiff's Brief") at 2 n.2. However, the prefix is otherwise irrelevant to this classification analysis, and is omitted throughout the opinion.

Similarly, at the time of entry, subheading 7020.00.60 was designated 7020.00.00, HTSUS. But that change too is of no moment here. *See* Plaintiff's Brief at 2 n.2; Defendant's Memorandum In Support of Its Motion For Summary Judgment and In Opposition to Plaintiff's Motion For Summary Judgment ("Defendant's Brief") at 1 n.1.

[2]Pomeroy's Complaint alleged, as an alternative theory, that the merchandise at issue is properly classifiable as "statuettes and other ornaments, of base metal," under subheading 8306.29.00, HTSUS, also duty-free. *See* Complaint ¶¶ 6, 16, 17. However, as discussed in note 7 below, Pomeroy has largely abandoned that argument in its briefs.

## I. Background

The merchandise at issue is principally used for indoor decoration, and consists of two separate components – a glass vessel with a rounded bottom, and a wrought iron pedestal or stand. *See* Plaintiff's Exhibit 1 (a representative sample of the merchandise at issue) ("Sample"); Defendant's Statement of Additional Material Facts As To Which There Is No Genuine Dispute to Be Tried ("Def.'s Statement of Add'l Mat. Facts) ¶¶ 1, 3; Plaintiff's Brief at 6-7 (indicating agreement with Customs' description of function of merchandise); Plaintiff's Reply to Defendant's Memorandum In Support of Its Motion For Summary Judgment and In Opposition to Plaintiff's Motion for Summary Judgment ("Plaintiff's Reply Brief") at 7 (noting "the agreement of the parties as to the facts");[3] Plaintiff's Statement of Material Facts As to Which There Are No Genuine Issues to Be Tried ("Pl.'s Statement of Mat. Facts") ¶¶ 2, 3; Defendant's Response to Plaintiff's Statement of Material Facts As to Which There Are No Genuine Issues to Be Tried ("Def.'s Resp. to Pl.'s Statement of Mat. Facts") ¶¶ 2, 3.

The pedestal, which stands approximately thirty inches high, is designed to cradle (that is, to hold and support) the glass vessel. *See* Sample; Plaintiff's Brief at 6-7; Defendant's Brief at 5. When it is inserted in the pedestal, with its open end facing upward, the vessel is used to hold a

---

[3]Although Pomeroy reiterated in its reply brief that the parties agree on the facts of the case (*see* Plaintiff's Reply Brief at 7), Pomeroy failed to file the required response to Defendant's Statement of Additional Material Facts. *See* USCIT R. 56(h) (all material facts set forth in movant's statement of facts deemed to be admitted "unless controverted by the statement *required* to be served by the opposing party) (emphasis added). In any event, whether by virtue of Pomeroy's statement in its reply brief, or by virtue of its failure to respond to Defendant's Statement of Additional Material Facts, all material facts set forth in Defendant's Statement are deemed to be admitted. *See* United States v. Continental Seafoods, Inc., 11 CIT 768, 672 F. Supp. 1481 (1987).

candle or some other object such as flowers, a plant, or a bottle of wine.  *See* Sample; Def.'s Statement of Add'l Mat. Facts ¶ 3; Plaintiff's Reply Brief at 7 (noting "the agreement of the parties as to the facts"); Affidavit of Edward Todd Pomeroy ("Pomeroy Aff.") ¶ 5 (although the goods were "designed as candle holders . . . they can be used to hold a variety of articles other than candles"). The rounded bottom of the glass vessel prevents it from standing on its own or from functioning in its intended manner without the wrought iron pedestal.  *See* Sample; Pl.'s Statement of Mat. Facts ¶ 3; Def.'s Resp. to Pl.'s Statement of Mat. Facts ¶ 3.

## A. Customs' 1994 Ruling

Customs' classification of the merchandise in the instant case was predicated on a prior ruling.  In that ruling (the "1994 Ruling"), Customs classified goods – marketed as "floor candles," and consisting of wrought iron pedestals and glass vessels – that were similar in all material respects to the merchandise at issue in this case.  HQ 956810 (Nov. 28, 1994).  The same glass vessels are used in both articles, and the styles of the wrought iron pedestals differ only slightly.  *See* Pomeroy Aff. ¶¶ 2, 4.

In its 1994 Ruling, Customs acknowledged the two separate components of the merchandise (the pedestals and the glass vessels), and therefore treated the "floor candles" as "composite goods." HQ 956810 (Nov. 28, 1994).  Finding that the glass vessel is the component that fulfills the function of the article, Customs determined that it is the glass vessel which imparts its "essential character" to the merchandise.  *Id*.  Based on that determination, Customs classified the "floor candles" as decorative articles of glass, under subheading 7013.99.90, HTSUS – the same classification it applied to the merchandise at issue here.  *Id.*

## B. Customs' 1995 Ruling

After Customs' 1994 ruling, importer Tucan International sought a ruling on the classification of such goods if the components were imported separately. *See* HQ 957413 (Mar. 31, 1995); Pomeroy Aff. ¶ 3. Pomeroy contends that the reasoning of this later Customs ruling (the "1995 Ruling") controls the case at bar.

In its 1995 Ruling, Customs determined that – imported separately – the wrought iron pedestals are classifiable as "statuettes and other ornaments, of base metal," under heading 8306, HTSUS. HQ 957413 (Mar. 31, 1995). As to the glass vessels, Customs determined that, because their rounded bottoms render them "incapable of standing, or of holding any article without the use of the wrought iron pedestals as supports," the glass vessels – imported separately – "are *a part* of the wrought iron pedestals with glass vessels." *Id*. (emphasis added). Customs concluded that the glass vessels alone could not be classified as decorative articles of glass under heading 7013, HTSUS – the classification applied in the 1994 Ruling – because that heading does not provide for *parts* of decorative glass articles. *Id.* Customs therefore ruled that – imported separately – the glass vessels are properly classified under 7020.00.00, HTSUS as "[o]ther articles of glass." *Id.*

## II. **Standard of Review**

Under USCIT Rule 56, summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to [ ] judgment as a matter of law." USCIT R. 56(c). Customs' classification decisions are reviewed through a two-step analysis – first construing the relevant tariff headings, then determining under which of those headings the

merchandise at issue is properly classified.  Bausch & Lomb, Inc. v. United States, 148 F.3d 1363,

1365 (Fed. Cir. 1998) (citing Universal Elecs., Inc. v. United States, 112 F.3d 488, 491 (Fed. Cir.

1997) ).

Interpretation of the relevant tariff headings is a question of law, while application of the

terms to the merchandise is a question of fact.  *See id.*  Summary judgment is thus appropriate where

– as here – the nature of the merchandise is not in question, and the sole issue is its proper

classification.  *See* Bausch & Lomb, *supra* (it is "clear that summary judgment is appropriate when

there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is").

On review, Customs' classification rulings are afforded a measure of deference proportional

to their power to persuade, in accordance with the principles set forth in Skidmore v. Swift & Co.,

323 U.S. 134 (1944).  *See* United States v. Mead Corp., 533 U.S. 218, 234-35 (2001); Mead Corp.

v. United States, 238 F.3d 1342, 1346.


### III. Discussion

The proper classification of all merchandise is governed by the General Rules of

Interpretation ("GRIs"), which provide a framework for classification under the HTSUS, and are to

applied in numerical order.  *See*, *e.g.*, Orlando Food Corp. v. United States, 140 F.3d 1437, 1439

(Fed. Cir. 1998); Baxter Healthcare Corp.  v. United States, 182 F.3d 1333, 1337 (Fed. Cir. 1997).

*See generally* Pillowtex Corp. v. United States, 171 F.3d 1370, 1374-75 *et seq*. (Fed. Cir. 1995)

(methodically applying the GRIs in order, in addressing a claim for classification under GRI 3(b),

among other theories).

GRI 1 requires that goods be classified "according to the terms of the headings and any relevant section or chapter notes and, provided such headings or notes do not otherwise require, according to the following [GRIs 2 through 6]." GRI 1. Thus, the first step is to determine whether the headings and notes require a particular classification. In classifying the merchandise at issue here, Customs considered two competing headings – 7013 and 8306.

Heading 7013, in relevant part, covers "glassware of a kind used for . . . indoor decoration or similar purposes." HTSUS, heading 7013. The merchandise at issue is used for indoor decoration, and includes a glass vessel which is used to hold a candle or other similar object such as flowers, a plant, or a bottle of wine. Since a part of the merchandise – specifically, the glass vessel – is made of glass, the merchandise *prima facie* falls under heading 7013.[4]

Heading 8306, in relevant part, covers "statuettes and other ornaments, of base metal." HTSUS, heading 8306. As the Explanatory Notes for heading 8306 indicate, that heading includes not only "wholly ornamental" articles, but also "articles whose only usefulness is to contain or support other decorative articles or to add to their decorative effect." Harmonized Commodity Description and Coding System: Explanatory Notes (2d ed. 1996) ("Explanatory Notes") 83.06.[5]

---

[4]As indicated in note 1 above, heading 7013 expressly excludes glassware covered by headings 7010 and 7018. HTSUS, heading 7013. Heading 7010 covers, in essence, glass containers of the kinds commonly used for the conveyance or packing of products; and heading 7018 covers articles including glass beads, imitation precious or semi-precious stones, non-prosthetic glass eyes, ornaments of lamp-worked glass, and very small microspheres of glass. *See* HTSUS heading 7010; HTSUS, heading 7018. The merchandise at issue in this case cannot be classified under either of those headings. *See* Def.'s Statement of Add'l Mat. Facts ¶ 7; Plaintiff's Reply Brief at 7 (indicating parties' agreement on the facts).

[5]The Explanatory Notes function as an interpretative supplement to the HTSUS. While they "do not constitute controlling legislative history," they "are intended to clarify the scope of HTSUS

The merchandise here consists in part of a pedestal of wrought iron (a base metal), which is used to contain or support another decorative article and to add to its decorative effect. Thus, as both Pomeroy and the Government acknowledge, the merchandise is *prima facie* classifiable under heading 8306 as well. *See, e.g.*, Plaintiff's Reply Brief at 6-7 (heading 8306 is one of "the only two classifications to be considered" in classifying merchandise under GRI 3(b) ), 11; Defendant's Brief at 9-10; Defendant's Reply Brief In Support of Motion for Summary Judgment and In Opposition to Plaintiff's Response ("Defendant's Reply Brief") at 3-4.

> The relevant part of GRI 2 is GRI 2(b), which provides:

> Any reference in a heading to a material or substance shall be taken to include a reference to mixtures or combinations of that material or substance with other materials or substances. *Any reference [in a heading] to goods of a given material or substance shall be taken to include a reference to goods consisting wholly or partly of such material or substance.* The classification of goods consisting of more than one material or substance shall be according to the principles of rule 3.

GRI 2(b) (emphasis added). Therefore, according to GRI 2(b), the reference to "base metal" in heading 8306 is read expansively, to embrace articles consisting "wholly or partly" of a base metal, such as wrought iron. Similarly, heading 7013 includes the articles described therein, even if they consist only "partly" of glassware. *But see* Explanatory Note 70.13 (discussed below).

> GRI 2(b) thus reaffirms that the merchandise in this case is *prima facie* classifiable under both heading 7013 and heading 8306. The merchandise is an article made in part of glass and used for indoor decoration or similar purposes. It is also an ornamental article made in part of a base

---

subheadings and offer guidance in interpreting its subheadings." Mita Copystar Am., Inc. v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994) (*citing* Lynteq, Inc. v. United States, 976 F.2d 693, 699 (Fed. Cir. 1992)).

metal (specifically, wrought iron). Accordingly, pursuant to the terms of GRI 1 and GRI 2, the merchandise at issue is *prima facie* classifiable both as "[g]lassware of a kind used for . . . indoor decoration or similar purposes" under heading 7013, and as "statuettes and other ornaments, of base metal" under heading 8306. *See* HTSUS, heading 7013; HTSUS, heading 8306; GRI 2(b); HTSUS, Section XV, Note 3 (stating that "base metal" includes "iron"); Explanatory Note 70.13; Explanatory Note 83.06; Def.'s Statement of Add'l Mat. Facts ¶¶ 1-3, 7; Plaintiff's Reply Brief at 7 (indicating parties' agreement on the facts).

While Pomeroy concedes that the merchandise in this case is *prima facie* classifiable under heading 8306, Pomeroy argues – albeit in another context – that classification under heading 7013 is precluded on two grounds.[6]

First, Pomeroy argues – in essence – that the merchandise cannot be classified under heading 7013 because, under Customs' 1995 Ruling, the glass vessels constitute "parts," and heading 7013 does not cover parts. *See* Plaintiff's Brief at 3, 7-10; Plaintiff's Reply Brief at 5-6 (making argument in context of GRI 3(b) ). But, while it is the glass vessel that implicates the potential classification of the merchandise under heading 7013, it is not the glass vessel alone that is *prima facie* classifiable under that heading. Rather, it is the article as an integral whole – the glass vessel, together with its wrought iron pedestal. The 1995 Ruling is thus irrelevant.

---

[6]Pomeroy appears to raise both arguments *not* as objections to the merchandise's *prima facie* classification under heading 7013, but rather only in the context of the analysis under GRI 3(b), discussed below. However, the arguments are – at least in some respects – more potent as objections to *prima facie* classification under heading 7013, because (as discussed in greater detail below) analysis under GRI 3(b) is limited to consideration of those headings under which the merchandise is *prima facie* classifiable. In any event, wherever they are considered, Pomeroy's arguments are unpersuasive. *See generally* Defendant's Brief at 12-14 (addressing both arguments, in context of GRI 3(b) analysis).

Pomeroy also contends that – "quite aside from the question of classification pursuant to GRI 3(b)" – the Explanatory Notes to heading 7013 preclude the classification of the merchandise at issue under that heading. *See* Plaintiff's Brief at 10-11. *See generally* Plaintiff's Reply Brief at 9-10.

The Explanatory Note in question states, in pertinent part:

> Articles of glass combined with other materials (base metal, wood, etc.), are classified in this heading *only* if the glass gives the whole the character of glass articles.

Explanatory Note 70.13 (emphasis in the original). Pomeroy asserts – at least for this purpose – that "the iron stand constitutes a substantial and essential part of the article," such that the article cannot be said to have "the character of [a] glass article[ ]." *See* Plaintiff's Brief at 10-11; Plaintiff's Reply Brief at 9-10.

Even a cursory examination of the merchandise belies Pomeroy's claim. The pedestal, while complementary to the glass vessel, is subsidiary to it in the context of the merchandise as an integral whole. The pedestal serves to elevate the glass vessel, and to hold it upright. But it is the glass vessel which is the focal point of the article, and which performs the article's overall function – holding a candle, flowers, a plant, a wine bottle, or some similar object. *See* Sample.

Moreover, as Pomeroy itself has repeatedly acknowledged (albeit in the context of the GRI 3(b) analysis, discussed below), it is the glass vessel which gives the merchandise as a whole its "essential character." *See* Plaintiff's Brief at 3, 7, 11; Plaintiff's Reply Brief at 1, 3, 10, 11. Pomeroy's concessions concerning "essential character" further undermine its argument on this point.

In short, the glass vessel gives the article as a whole the character of a glass vessel, within the meaning of Explanatory Note 70.13. Accordingly, nothing in the Explanatory Notes precludes the *prima facie* classification of the merchandise at issue under heading 7013 (in addition to heading 8306).

Because the merchandise is *prima facie* classifiable under heading 7013, it cannot be classifiable under heading 7020. Heading 7020 is a residual "basket" provision that describes a category of glassware not covered elsewhere in Chapter 70, HTSUS. Heading 7020 is therefore "trumped" by heading 7013, another heading in the same chapter which is more specific. *See*, *e.g.*, Franklin v. United States, 289 F.3d 1017 (Fed. Cir. 2002) (reversing classification of merchandise under basket provision, in favor of more specific tariff heading). The competing tariff provisions, therefore, are headings 7013 and 8306; heading 7020 is excluded, by definition.

Where, as here, merchandise is "*prima facie* classifiable under two or more headings," classification is governed by GRI 3. GRI 3 provides:

> When, by application of rule 2(b) or for any other reason, goods are, *prima facie*, classifiable under two or more headings, classification shall be effected as follows:
>
> (a)     The heading which provides the most specific description shall be preferred to headings providing a more general description. However, when two or more headings each refer to part only of the materials or substances contained in . . . composite goods . . ., those headings are to be regarded as equally specific . . . .
>
> (b)     Mixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale, . . . shall be classified as if they consisted of the material or component which gives them their essential character . . . .

>     (c)     When goods cannot be classified by reference to 3(a) or 3(b), they
>             shall be classified under the heading which occurs last in numerical
>             order among those which equally merit consideration.

GRI 3.

Because the two competing headings – heading 7013 and heading 8306 – each refer only to part of the composite article at issue, the exception to GRI 3(a)'s rule of "relative specificity" applies, and the two headings are deemed equally specific. Analysis therefore proceeds to GRI 3(b). GRI 3(b) and its "essential character" test are the primary focus of the parties' dispute.

In its 1994 Ruling, classifying composite merchandise virtually identical to that at issue here, Customs found that the "essential character" of the merchandise was imparted by the glass vessel. Customs reasoned that "[t]he glass vessel is the component which distinguishes the article . . . [T]he glass is the component which fulfills the function of the article; it holds the object or objects to be displayed, such as [ ] flowers, plants, wine bottles, candles, etc." HQ 956810 (Nov. 28, 1994).

So too, in this case, the "essential character" of the merchandise is imparted by the glass vessel. Accordingly, as between heading 7013 and heading 8306, Customs classified the merchandise here under heading 7013 – as if the merchandise "consisted of the . . . component which gives [the composite merchandise its] essential character," under GRI 3(b).

While Pomeroy agrees that the glass vessel gives the merchandise as a whole its "essential character" (*see*, *e.g.*, Plaintiff's Brief at 3, 7, 11; Plaintiff's Reply Brief at 1, 3, 10, 11),[7] Pomeroy

_____

[7]On the penultimate page of its reply brief, Pomeroy seeks to hedge a bit on its oft-repeated admission that it is the glass vessel which imparts its "essential character" to the merchandise at issue. *See* Plaintiff's Reply Brief at 10. Pomeroy hems that, while it agrees that the glass vessel provides the "essential character" to the merchandise, it is "of the opinion" that the pedestal "could

fundamentally disagrees with Customs' resulting classification. Pomeroy's objections, however, are unavailing.

The gravamen of Pomeroy's complaint is that the merchandise here should be classified under the heading 7020. However, as explained above, the merchandise is *prima facie* classifiable under heading 7013, and so cannot also be classifiable under heading 7020, which is a "basket" provision.

Because the merchandise is not *prima facie* classifiable under heading 7020, that heading cannot be considered in the GRI 3(b) analysis. As evidenced by the plain language of the rule itself, analysis under GRI 3 is limited to those headings under which merchandise is *prima facie* classifiable. *See* Defendant's Reply Brief at 4-5 (*citing* Pillowtex Corp. v. United States, 171 F.3d 1370 (Fed. Cir. 1999) ).

Specifically, GRI 3(a), (b) and (c) are subordinate to the introductory language of GRI 3, which prefaces and limits the subsections that follow it. Thus, for example, GRI 3(a)'s pointed references to "the heading," "headings," and "those headings" clearly refer back to the phrase "under two or more headings" in the introductory language of GRI 3. Similarly, GRI 3(c)'s reference to "heading" also relates back to the introductory language of GRI 3. While GRI 3(b) does not refer explicitly to the terms "heading" or "headings," GRI 3(b) must be read *in pari materia* with the introductory language of GRI 3, as well as the language of its corresponding subsections – GRI 3(a)

---

just as well" be considered to do so. *Id*. *But see* Defendant's Reply Brief at 5 n.10. Pomeroy's eleventh-hour equivocation aside, the merchandise speaks for itself. *See* Sample. For all the reasons set forth in Customs' 1994 Ruling and summarized above, the "essential character" of the merchandise is derived not from the pedestal, but from the glass vessel.

and GRI 3(b).  GRI 3(b)'s references to GRI 3(a) and the terms "material" and "component" reflect a clear intent to follow in GRI 3(b) the same scheme embodied in GRI 3(a) and 3(c) – that is, to consider only those headings under which the goods at issue are *prima facie* classifiable.[8]  *See* Defendant's Reply Brief at 4 n.8.

Moreover, reading GRI 3(b) so as to limit the headings considered to those two or more competing headings under which the goods are *prima facie* classifiable is the only construction of GRI 3(b) which harmonizes GRI 3 with GRI 1.  If an article were classifiable under some heading other than one under which it is *prima facie* classifiable, that classification would violate GRI 1, the paramount principle in the proper classification of goods.  *See* Defendant's Reply Brief at 5.

Pomeroy's failure to establish that the merchandise here is *prima facie* classifiable under heading 7020 is fatal to its case, and obviates any need to reach its various arguments under GRI 3(b).  They are, in any event, lacking in merit.

Invoking Customs' 1995 Ruling, Pomeroy argues – in a nutshell – that, under GRI 3(b), "[i]f the essential character of the article is imparted by the glass vessel, then it is the classification of the glass vessel alone which will determine the classification of the imported article."  Plaintiff's Reply Brief at 5.  Pomeroy notes that the "essential character" of the merchandise here is imparted by the

---

[8]Significantly, Pomeroy has pointed to no case in which goods have been classified pursuant to GRI 3(b) under some heading other than one of the headings under which the goods were *prima facie* classifiable.

glass vessel, and emphasizes that – under Customs' 1995 Ruling – the glass vessel, imported alone, is classified under heading 7020 rather than heading 7013 (which Customs rejected because it does not cover "parts"). *See*, *e.g.*, Plaintiff's Brief at 3, 9-10. Pomeroy therefore concludes that GRI 3(b) mandates that the composite merchandise here at issue be classified under heading 7020 as well.

But, again, Pomeroy's reliance on the 1995 Ruling is misplaced. The fact that heading 7013 does not expressly provide for parts of glassware is irrelevant because – for purposes of classifying the composite articles here at issue under GRI 3(b) – the glass vessels are not "parts" but, rather, "components" (and, in fact, the components which impart to the composite articles their "essential character").[9]

In effect, GRI 3(b) creates a "legal fiction" in which a composite article is classified as if it consists wholly of the component which imparts the overall good with its "essential character." *See* Defendant's Brief at 13-14 (*citing* Better Home Plastics Corp. v. United States, 20 CIT 221, 226, 916 F. Supp. 1265, 1268 (1996), *aff'd*, 119 F.3d 969 (Fed. Cir. 1997) ). But that does not mean, as Pomeroy contends, that the composite article is classified the same as one of its parts imported separately. Indeed, to the contrary, because – under GRI 3(b) – a composite article as a whole is considered for classification purposes to be made up entirely of one of its components, that component cannot then logically be considered a "part"of the composite article. Under the "legal fiction" of GRI 3(b), the component, in effect, *is* the composite article. *See* Defendant's Brief at 13-14; *see also* Defendant's Reply Brief at 6-7.

---

[9]Pomeroy's other argument concerning heading 7013 – its claim that the Explanatory Notes to that heading preclude classification of the merchandise under heading 7013 – is addressed above, in the context of GRI 1 and GRI 2(b). The rationale outlined there applies with equal force, whether Pomeroy's argument is considered under GRI 1 and GRI 2(b), or under GRI 3(b). Accordingly, it is not repeated here.

It is similarly irrelevant that the glass vessels, when imported alone, are classified under heading 7020 (essentially as replacement "parts" for the composite articles classified under 7013). A separately-imported glass vessel plainly is not a composite article within the meaning of the statute. Thus, in contrast to the composite article in the case at bar, the separately-imported glass vessel cannot be classified under GRI 3(b) as if it constituted the whole of a heading 7013 glass article. *See generally* Defendant's Brief at 14.

Pomeroy apparently would read GRI 3(b) to require that a composite article must *in every case* be classified the same as one of its component parts *imported separately*. But that ignores a fundamental tenet of customs law. It is well established that, for tariff purposes, merchandise is to be classified in the condition in which it is imported. *See* United States v. Citroen, 223 U.S. 407 (1912). And the merchandise here at issue is a composite article consisting of both a wrought iron pedestal and a glass vessel – not a glass vessel alone.

The same tenet of customs law disposes of Pomeroy's argument concerning disparate treatment. In an effort to support its position, Pomeroy points out that Customs' classification of the composite merchandise here at issue renders it dutiable, even though the two components – imported separately – are duty-free. *See* Plaintiff's Reply Brief at 7-8. However, noting that "[a]n item must be evaluated for tariff purposes in its condition as imported," the Court of Appeals has held that, under circumstances such as these, the classification system must be enforced as enacted by Congress, no matter how anomalous the result. Rollerblade, Inc. v. United States, 112 F.3d 481, 487-88 (Fed. Cir.1997) (involving case of "tariff inversion," upholding imposition of tariffs on importation of in-line skate boots, even though boots with skates already attached could be imported

duty-free, putting companies assembling goods in the U.S. at a competitive disadvantage) (*quoting* Simod Am. Corp. v. United States, 872 F.2d 1572, 1577 (Fed. Cir. 1989) ).

Pomeroy also accuses the Government of misreading GRI 3(b) by "mix[ing] up" the references to "material" and "component" in that provision. *See generally* Plaintiff's Brief at 5; Plaintiff's Reply Brief at 4, 7. Pomeroy attempts to parse the language of GRI 3(b), in an effort to support its central thesis – that the reference in the GRI to the "component" giving the overall merchandise its "essential character" means that composite goods should be classified as that component would be classified if the component were imported alone. *See* Plaintiff's Reply Brief at 3-4. In essence, Pomeroy's proposed reading would split GRI 3(b) into two rules: (1) *mixtures* would be classified as if the good consisted of the *material* that imparts the good's essential character; and (2) *composite goods* would be classified as if they consisted of the *component* that imparts the good's essential character. *See* Plaintiff's Reply Brief at 4.

But Pomeroy's effort to "diagram" GRI 3(b) is ill-conceived. As an initial matter, while Pomeroy's strained interpretation purports to explain the application of GRI 3(b) to both mixtures and composite goods, GRI 3(b) also addresses the classification of "goods put up in sets for retail sale." *See* GRI 3(b). By arguing that GRI 3(b)'s reference to "materials" relates only to the classification of mixtures, and that the reference to "components" relates only to composite goods, Pomeroy is left with no corresponding term in GRI 3(b) which would relate to (and govern the classification of) goods put up in sets for retail sale. Although Pomeroy conveniently seeks to dismiss "the question of sets" as "not applicable here" (*see* Plaintiff's Reply Brief at 4), the omission is evidence of Pomeroy's flawed logic.

Moreover, as the Government notes, the language of GRI 3(a) contradicts Pomeroy's position. GRI 3(a) expressly refers to "the *materials* or substances contained in mixed or composite goods." *See* Defendant's Reply Brief at 5 n.9 (*referring* to GRI 3(a), emphasis added). (Indeed, while GRI 3(a) speaks of composite goods, it does not even mention the term "component" – the term which Pomeroy associates with composite goods in its asserted interpretation of GRI 3(b), discussed above.) Pomeroy's interpretation is further undercut by the sentence structure of GRI 3(b), which refers to "composite goods *consisting of different materials* or made up of different components." *See* Defendant's Reply Brief at 5 n.9 (*referring to* text of GRI 3(b), emphasis added). That language too plainly demonstrates that composite goods can consist of different *materials*, as well as different components. To the same effect is the Explanatory Note for GRI 3(b), which specifically refers to composite goods as consisting of different *materials* and different components. *See* Defendant's Reply Brief at 5 n.9 (*referring to* Explanatory Notes at GRI 3(b) ). *See also* Mita Copystar Am. v. United States, 160 F.3d 710, 712 (Fed. Cir. 1998) (GRI 3(b) "directs that composite goods made up of different components should be classified as though they consisted of the *material* or component that gives them their 'essential character' ") (emphasis added).

In sum, like its other arguments for classification under heading 7020, Pomeroy's attempts to parse the language of GRI 3(b) are simply unpersuasive.

## IV. <u>Conclusion</u>

Applying GRI 3(b), Customs properly classified the merchandise at issue as "[g]lassware of a kind used for . . . indoor decoration or similar purposes," under subheading MX7013.99.90, HTSUS. Pomeroy's motion for summary judgment is therefore denied, and the Government's cross-motion is granted.

Judgment will be entered accordingly.

_____
Delissa A. Ridgway
Judge

Decided:   June 19, 2002
           New York, New York