# United States Court of Appeals for the Federal Circuit

---

**ARKO FOODS INTERNATIONAL, INC.,**
*Plaintiff-Appellee,*

v.

**UNITED STATES,**
*Defendant-Appellant.*

---

2010-1211

---

Appeal from the United States Court of International Trade in case No. 07-CV-0274, Judge Gregory W. Carman.

---

Decided: August 11, 2011

---

STEPHEN M. DE LUCA, Hume & De Luca, PC, of Washington, DC, for plaintiff-appellee.

JASON M. KENNER, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for defendant-appellant. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, BARBARA S. WILLIAMS, Attorney in Charge, International Trade Field Office, of New York, New York. Of counsel on the brief was MICHAEL HEYDRICH, Office of Assistant Chief Counsel,

United States Customs & Border Protection, of New York, New York.

_____

Before BRYSON, SCHALL and MOORE, *Circuit Judges*.

MOORE, *Circuit Judge*.

The government appeals the United States Court of International Trade's grant of summary judgment that mellorine is not properly classified as an article of milk under the Harmonized Tariff Schedule of the United States (HTSUS). For the reasons described below, we *affirm* the trial court's decision.

BACKGROUND

The imported product at issue in this case is mellorine, a frozen dessert similar to ice cream, but with vegetable or animal fat substituted for at least some of the butterfat. Arko Foods International, Inc. (Arko) imports six flavors of mellorine relevant to this case: purple yam, fruit salad, mango, macapuno (a type of coconut), durian (a fruit), and Quezo Royale (a cheese and coconut flavor also known as Quezo Real). On appeal, the parties do not dispute that Arko's mellorine is properly classified under HTSUS Chapter 21, "Miscellaneous Edible Preparations," Heading 2105, "Ice cream and other edible ice, whether or not containing cocoa," as codified at 19 U.S.C. § 1202. The parties disagree only on the proper subheading, in particular, whether Arko's mellorine is an article of milk.

United States Customs and Border Protection (Customs) liquidated Arko's mellorine under HTSUS Subheading 2105.00.40, which applies to "dairy products described in additional U.S. note 1 to Chapter 4" for amounts above a

certain import quota. This note describes three categories of dairy products:

- malted milk, and *articles of milk* or cream (except (a) white chocolate and (b) inedible dried milk powders certified to be used for calibrating infrared milk analyzers);

- articles containing over 5.5 percent by weight of butterfat which are suitable for use as ingredients in the commercial production of edible articles . . . ; or

- dried milk, whey or buttermilk . . . which contains not over 5.5% by weight of butterfat and which is mixed with other ingredients [and contains over 16% milk solids] . . . .

HTSUS, additional U.S. note 1 to Chapter 4 (Additional Note 1) (emphasis added). Customs determined that Arko's mellorine was classifiable under 2105.00.40 because it is an article of milk as described in Additional Note 1.

After Customs denied Arko's protests, Arko filed suit at the Court of International Trade. Arko argued that mellorine is a composite good that, under Rule 3(b) of the General Rules of Interpretation (GRIs), is prima facie classifiable under Heading 0811 (fruits and nuts) or 2106 (food preparations not elsewhere specified). The trial court disagreed. Applying GRI 1, the court determined that mellorine was prima facie classifiable only under Heading 2105 as edible ice. *Arko Foods Int'l, Inc. v. United States*, 679 F. Supp. 2d 1369, 1375 (Ct. Int'l Trade 2009).

Having determined that the mellorine is classifiable under Heading 2105, the trial court next addressed the proper subheading. Relying on *Wilsey Foods, Inc. v. United States*,

18 C.I.T. 212 (1994), Arko argued that mellorine is not classifiable under 2105.00.40 as an article of milk because milk is not the essential ingredient, is not the ingredient of chief value, and is not the preponderant ingredient. Ultimately, the trial court agreed, and classified Arko's mellorine under subheading 2105.00.50, "Ice cream and other edible ice, . . . : Other: Other." The trial court found that milk is not the essential ingredient because mellorine also requires animal or vegetable fat and sweetener. *Arko*, 679 F. Supp. 2d at 1379 (citing FDA regulation 21 C.F.R. § 135.130(a)(1), which defines mellorine). Next, the trial court found that milk is not the ingredient of chief value because milk powder is the second-most expensive ingredient in all but the Quezo Royale flavor. In evaluating the Quezo Royale flavor, the trial court determined that the flavoring ingredients—cheese and coconut milk—are more costly together than the milk powder. The trial court also stated that when the relative value of the milk powder in Quezo Royale mellorine is considered along with the essentiality and preponderance factors, "it becomes clear that different flavors of mellorine do not require classification under separate subheadings." *Id.* at 1379-80. And third, the trial court found that milk is not the preponderant ingredient because milk-derived ingredients range from third to sixth most prevalent depending on the flavor. *Id.* at 1380. The trial court also found the government expert's testimony of limited value because, although the expert testified that mellorine is a dairy product, the testimony did not address whether mellorine was the specific type of dairy product described in Additional Note 1. *Id.* The court concluded that summary judgment was appropriate because there was no dispute between the parties as to the nature of the merchandise, but only as to the legal issue of whether mellorine is an article of milk under the HTSUS. The trial court concluded that the mellorine is not an article of milk but instead properly classified as 2105.00.50 ("other"). *Id.*

at 1380-82.  The government appeals, and we have jurisdiction under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

We review the Court of International Trade's summary judgment ruling de novo. *Drygel, Inc. v. United States*, 541 F.3d 1129, 1133 (Fed. Cir. 2008).  Proper classification of goods under the HTSUS is a two step process: (1) ascertaining the proper meaning of specific terms in the tariff provision; and (2) determining whether the goods come within the description of those terms as properly construed. *Millennium Lumber Distrib., Ltd. v. United States*, 558 F.3d 1326, 1328 (Fed. Cir. 2009).  "The interpretation of the headings and subheadings of the HTSUS is a question of law reviewed without deference." *Drygel*, 541 F.3d at 1133. "[W]here Congress has clearly stated its intent in the language of a statute, a court should not inquire further into the meaning of the statute." *Millennium Lumber*, 558 F.3d at 1328.  To classify goods under the HTSUS, we apply the GRIs in numerical order. *N. Am. Processing Co. v. United States*, 236 F.3d 695, 698 (Fed. Cir. 2001).  Thus, our analysis begins with GRI 1, which directs us to first examine the terms of the headings and any relevant Section or Chapter Notes. *Pillowtex Corp. v. United States*, 171 F.3d 1370, 1373 (Fed. Cir. 1999).

Chapter Notes, unlike Explanatory Notes, are legally binding. *Millennium Lumber*, 558 F.3d at 1329.  Where the HTSUS does not define a term, the correct meaning of the term is its common commercial meaning. *Airflow Tech., Inc. v. United States*, 524 F.3d 1287, 1291 (Fed. Cir. 2008). Whether goods fall within the scope of the headings and subheadings is a question of fact, and Arko bears the burden of proving the classification is erroneous because Customs' classification decisions are presumed correct. *Millennium*

*Lumber*, 558 F.3d at 1328. We review the factual findings of the Court of International Trade for clear error. *Deckers Corp. v. United States*, 532 F.3d 1312, 1315 (Fed. Cir. 2008).

On appeal, the government does not dispute that Heading 2105, which encompasses ice cream and other edible ice, is correct. The government asserts that the trial court clearly erred by classifying Arko's mellorine under subheading 2105.00.50 "other" instead of subheading 2105.00.40 as an article of milk, which is a dairy product described in Additional Note 1. The government argues that mellorine is an article of milk because the industry classifies it as a dairy product. Arko does not dispute that mellorine is a dairy product, although it pointedly notes that the food science textbook cited by the government at trial describes mellorine as a "vegetable fat frozen dessert." The question before this court, however, is not whether mellorine is a dairy product. It is whether Arko's mellorine is a dairy product described in Additional Note 1—specifically, whether it is an article of milk.

The facts in *Pillowtex* are remarkably similar. In *Pillowtex*, the goods at issue were comforters consisting of a cotton shell stuffed with white duck down. 171 F.3d at 1372. We began our analysis with GRI 1, and examined the terms of the headings and the applicable section and chapter notes. Like this case, the parties were in agreement as to the proper heading under which the goods should be classified, but disputed the appropriate subheading. The dispute centered around whether the cotton and down comforters should be classifiable under subheading 9404.90.80 (bedding articles "of cotton") or 9404.90.90 ("other" bedding articles). *Id.* at 1375. We concluded that the language of the heading, subheading, and Explanatory Notes did not "provide any insight into the meaning of the term 'of cotton' as it relates to comforters." *Id.* at 1374. The

same is true here.  The heading, subheading, and Explanatory Notes do not indicate what is required for something to be considered an article of milk.

Borrowing from our analysis in *Pillowtex* and the GRIs, we conclude that the appropriate definition for an article of milk is a mixture with the "essential character" of milk. The court in *Pillowtex* applied this same test and concluded that the essential character of a comforter is its filling.  *Id.* at 1376.  Therefore, the court held that the comforters at issue were properly classified as "other" rather than as "of cotton."  *Id.*  GRI 2(a) similarly explains:  "Any reference in a heading to an article shall be taken to include a reference to that article incomplete or unfinished, provided that, as entered, the incomplete or unfinished article has the essential character of the completed article."  GRI 2(b) explains that "[t]he classification of goods consisting of more than one material or substance shall be according to the principles of rule 3."  GRI 3(b) again explains that goods should be classified as the material or component "which gives them their essential character."  While we do not believe that for something to be an article of milk it must be 100% milk, we decline the government's invitation for this court to adopt an exact percentage of milk which must be included in order for something to be an article of milk.  Instead, we believe that the essential character test should govern.  The question thus becomes:  Does the mellorine at issue have the essential character of milk?

We recognize that the essential character test requires "a fact-intensive analysis."  *Home Depot v. United States*, 491 F.3d 1334, 1337 (Fed. Cir. 2007).  The GRIs do not define "essential character," but the Explanatory Notes explain that "[t]he factor which determines essential character will vary as between different kinds of goods.  It may, for example, be determined by the nature of the material or

component, its bulk, quantity, weight or value, or by the role of a constituent material in relation to the use of the goods." Explanatory Note VIII for GRI 3(b); *Home Depot*, 491 F.3d at 1336-67.

Hence, while the trial court did not phrase its analysis precisely as one of essential character, it nonetheless performed the correct inquiry. There are no genuine issues of material fact in this case. The parties agree that mellorine is not derived from or made from any one ingredient. FDA regulations define mellorine as a frozen food product containing milk-derived nonfat solids, vegetable or animal fat other than milk fat, and a sweetener such as sugar. 21 C.F.R. § 135.120. The regulation further recites that mellorine "is characterized by the addition of flavoring ingredients." *Id.* Each of these ingredients has a vital role in Arko's mellorine. The parties do not dispute that, even ignoring water, milk powder is not the most preponderant ingredient by weight in any of the flavors at issue: there are more sugar, oil, and/or flavoring ingredients in each flavor. It is also undisputed that, in all flavors except Quezo Royale, milk powder is not the costliest ingredient. Regarding the Quezo Royale flavor – which the government does not argue separately – the flavoring ingredients considered together are more costly than the milk powder. In light of these undisputed facts, we conclude that the mellorine does not have the essential character of an article of milk.

We conclude that the trial court properly classified the products at issue under subheading 9404.90.90 ("other"). Accordingly, we affirm the Court of International Trade's judgment.

**AFFIRMED**

COSTS

No costs.