**MITA COPYSTAR AMERICA, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 98–1203.**

United States Court of Appeals, Federal Circuit.

Nov. 6, 1998.

during the time period at issue in this case. *See* HTSUS subheading 9902.90.90 (1992). The Court of International Trade held that the goods were properly classified as "chemical preparations for photographic uses." We hold that they should have been classified as "parts and accessories of electrostatic photocopying apparatus," and we therefore reverse.

Steven P. Florsheim, Grunfeld, Desiderio, Lebowitz & Silverman LLP, of New York, NY, argued for plaintiff–appellant.

Barbara M. Epstein, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, International Trade Field Office, of New York, NY, argued for defendant–appellee. With her on the brief were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director, of Washington, DC; and Joseph I. Liebman, Attorney–in–Charge, International Trade Field Office, of New York, NY. Of counsel on the brief was Beth Brotman, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, of New York, New York.

John M. Peterson, Neville, Peterson & Williams, of Washington, DC, for amici curiae. With him on the brief was George W. Thompson.

Before MICHEL, PLAGER, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

This customs classification case involves imported toner cartridges that are shaped to fit into specific electrostatic photocopiers. Between 1990 and 1992, the Customs Service classified the cartridges under subheading 3707.90.30 of the Harmonized Tariff Schedule of the United States (HTSUS). That subheading is termed "chemical preparations for photographic uses," and at the time it carried a duty of 8.5% *ad valorem.* Appellant Mita Copystar America challenged the classification in the Court of International Trade, arguing that the toner cartridges should have been classified as "parts and accessories of electrostatic photocopying apparatus" under subheading 9009.90.00 of the HTSUS. Goods in that subheading entered duty free

I

In analyzing the classification issue in this case, the trial court properly began with Rule 1 of the General Rules of Interpretation (GRI) of the HTSUS, which directs that merchandise shall be classified "according to the terms of the headings and any [relevant] section or chapter notes." The court ruled that the toner cartridges could be classified either under subheading 3707.90.30, as "chemical preparations for photographic uses," or under subheading 9009.90.00, as "parts and accessories of electrostatic photocopying apparatus." Because subheading 3707.90.30 does not address how the merchandise is packaged, the court found that subheading 3707.90.30 was broad enough to cover cartridges containing toner. In addition, because it was undisputed that the photocopiers that used the toner cartridges could not function without them and that the cartridges were dedicated for use solely with certain types of photocopiers, the court held that the cartridges could properly be characterized as either "parts" or "accessories" of those photocopiers under subheading 9009.90.00

The court then pointed out that note 2 in section VI of the HTSUS, which contains heading 3707, provides that goods classifiable in heading 3707 "by reason of being put up in measured doses or for retail sale" are to be classified in that heading "and in no other heading of the tariff schedule." That note, according to the court, seemed to require the toner cartridges to be classified under heading 3707. On the other hand, the court pointed out, note 2(b) of chapter 90, which contains heading 9009 provides that "[o]ther parts and accessories, if suitable for use solely or principally with a particular kind of

machine, instrument or apparatus" are to be classified with those machines, instruments or apparatus. Because the toner cartridges at issue in this case fit within that description, the court observed that note 2(b) of chapter 90 appeared to require the cartridges to be classified under heading 9009.

Finding the two notes in conflict, the court concluded that GRI 1 did not resolve the classification dispute, and it therefore looked to the succeeding provisions of the GRI. Turning to GRI 3(b), which directs that composite goods made up of different components should be classified as though they consisted of the material or component that gives them their "essential character," the court concluded that toner gives the toner cartridges their essential character, and that the toner cartridges were therefore properly classified as "chemical preparations for photographic uses" under subheading 3707.90.30.

## II

The parties have previously litigated the proper classification of photocopy toner. In *Mita Copystar America v. United States*, 21 F.3d 1079 (Fed.Cir.1994) (*Mita I*), the parties disputed whether toners and developers are "chemical preparations for photographic uses" or "unmixed products for photographic uses" within the meaning of competing subheadings of heading 3707 of the HTSUS. This court affirmed the judgment of the Court of International Trade upholding the classification of the toner as a chemical preparation for photographic use under subheading 3707.90.30. The trial court held, and the parties agree, that the decision in *Mita I* does not govern the classification dispute in this case, because *Mita I* did not present the question whether toner cartridges should be classified as parts of photocopy machines under chapter 90 of the HTSUS.

## III

■ The government contends that the classification decision in this case is governed by various provisions of the GRI, including GRI 1, GRI 2(b), GRI 3(b), and GRI 5(b). The structure of the GRI controls the point at which each rule comes into play. The first step in analyzing the classification issue is to determine the applicable subheadings, if possible, under GRI 1. As GRI 1 expressly provides, the other GRI provisions may be consulted only if the headings and notes "do not otherwise require" a particular classification. We agree with Mita that the headings and notes resolve the classification dispute in this case. Thus, there is no need to address the government's arguments with respect to the other GRI provisions.

With respect to the inquiry under GRI 1, the government argues that the trial court was incorrect in ruling that the toner cartridges at issue in this case constitute "parts and accessories of electrostatic photocopying apparatus" within the meaning of subheading 9009.90.00. According to the government, the toner cartridges can only be classified under heading 3707 as chemical preparations for photographic use. We disagree.

This court addressed the scope of a tariff subheading for parts in *Amersham v. United States*, 728 F.2d 1453 (Fed.Cir.1984). That case concerned the classification of radioactive substances contained in foil disks. The disks were designed for use in smoke detectors. The court held that the disks should be classified as parts of smoke detectors rather than as radioactive substances in containers. *See id.* at 1456. In so ruling, the court adopted the analysis of an earlier case, *Bruce Duncan Co. v. United States*, 63 Cust. Ct. 412, 1969 WL 13830 (1969), in which the Customs Court had held that butane fuel cartridges are classifiable as parts of cigarette lighters rather than as butane in containers. Commenting on the *Duncan* case, the court in *Amersham* stated:

As with the special foil here, the metal cartridges were not designed for or capable of reuse; they served as the standard device for transporting the flammable butane; they were sold with the butane and remained with it throughout its commercial use in the cigarette lighter.

728 F.2d at 1456. Each of those factors pertains equally to the Mita toner cartridges. The cartridges are sold with toner inside; they remain with the toner throughout its use by the photocopier; they are the stan-

dard device for providing toner to the photocopier; and they are not designed for reuse.

The government seeks to distinguish *Amersham* and *Duncan* by pointing out that those cases were decided under the prior tariff statute rather than the HTSUS. The government points to nothing, however, to suggest that the term "part" was meant to have a different definition under the HTSUS than under its predecessor. To the extent that the government relies on GRI 3(b) of the HTSUS, which governs composite articles, to distinguish *Amersham* and *Duncan,* the argument fails because, as the trial court properly held, it is not appropriate to reach GRI 3(b) if GRI 1 dictates the proper classification for particular merchandise. And if the toner cartridges are considered "parts" of a photocopy machine under the governing principles, it is unnecessary to go beyond GRI 1 to classify the cartridges.

In support of its theory that toner cartridges should be classified only according to their contents, the government relies on a number of classification cases in which courts held that the usual containers of merchandise were properly classified according to their contents rather than the nature of the containers. *Duncan, Amersham,* and this case, however, present a different issue—whether a container that performs a specific function within a machine should be classified as a "part" of that machine.

With respect to the "parts" issue, the government contends that toner cartridges cannot be considered parts of photocopy machines because they are like the film pack components that were held not to be parts of a camera in *American Express v. United States,* 29 C.C.P.A. 87, 1941 WL 4604 (1941). That decision, however, does not help the government. The court in the *American Express* case ruled as it did because it concluded that exposed film is "a product of the camera, not an integral part of such camera." *Id.* at 93. Moreover, the court noted that Congress's decision to afford separate tariff treatment to film indicated that Congress did not want film to be considered as a "part" of a camera, regardless of whether it was packaged in reels, rolls, or packs. *See id.* at 94–95. Analogizing to a typewriter, the court

noted that a ribbon spool carrying a roll of print ribbon is a "part" of a typewriter, while the paper on which the typewriter imprints letters is not a part of the typewriter, but "mere material upon which the typewriter is designed to operate." *Id.* at 95. Like the typewriter ribbon spool, the toner cartridge delivers the substance used for printing on paper and thus plays an essential role in the functioning of the machine. Unlike typewriter paper, copier paper, or photographic film, toner is not ordinarily regarded as the material upon which the photocopy machine operates. Accordingly, the *American Express* case does not undermine the trial court's conclusion that Mita's toner cartridges are "parts" of a photocopying apparatus as that term is used in subheading 9009.90.00.

In addition to finding that the toner cartridges fell within the scope of subheading 9009.90.00, the trial court found that the toner cartridges also fell within the scope of subheading 3707.90.30 as "chemical preparations for photographic uses." While the parties debate this point on appeal, we can assume without deciding that the trial court was correct in interpreting the scope of the terms of 3707.90.30, because even if the toner cartridges are described by both subheadings, note 2(b) of chapter 90 requires that the toner cartridges be classified in subheading 9009.90.00 rather than in subheading 3707.90.30.

■ The trial court did not regard note 2(b) of chapter 90 as dispositive, because the court construed note 2 of Section VI as containing a contrary directive requiring that the toner cartridges be classified under heading 3707. Mita argues that the court erred in finding note 2 of section VI applicable to the toner cartridges, and we agree.

Section VI is captioned "Products of the Chemical or Allied Industries." Note 2 of that section reads as follows:

Subject to note 1 above, goods classifiable in heading ... 3707 ... *by reason of being put up in measured doses or for retail sale* are to be classified in those headings and in no other heading of the tariff schedule.

HTSUS, section VI–1 (1992) (emphasis added). Mita points out that, in accordance with

*Mita I,* the trial court characterized toner as a mixed product, *i.e.,* a chemical preparation for photographic uses, *see* subheading 3707.90.30, not an "unmixed product[ ] for photographic uses," *see* subheading 3707.90.60. Unmixed products under subheading 3707.90.60 are classifiable in heading 3707 only when they are "put up in measured portions or for retail sale." Mixed products, by contrast, are classified in heading 3707 regardless of whether they are imported in measured portions or in condition for retail sale. Mita therefore argues that its toner cartridge, if classifiable in heading 3707, is not classifiable in that heading "by reason of" its being "put up in measured portions or put up for retail sale." Accordingly, Mita argues, note 2 of section VI does not apply to its toner, and the provision requiring that merchandise covered by that note be classified in the designated headings "and in no other heading of the tariff schedule" is inapplicable in this case.

Mita's argument, which the government does not challenge, is persuasive. Note 2 to section VI does not say that all goods classifiable in heading 3707 must be classified in that heading, or even that all goods classified in heading 3707 and put up in measured portions or put up for retail sale must be classified in that heading. Instead, it specifically states that the mandatory classification provision applies only if the merchandise in question is classified in heading 3707 "by reason of" its being put up in measured doses or for retail sale, and the only products under heading 3707 that meet that criterion are "unmixed products for photographic uses," a category that does not include toner. We therefore agree with Mita that note 2 of section VI does not prohibit the classification of toner cartridges under any other heading.

Absent the prohibition of note 2 of section VI, the trial court's conclusion that the toner cartridges are "parts" of photocopy machines within the meaning of subheading 9009.90.00 is dispositive of the classification issue in this case. As the trial court pointed out, note 2(b) of chapter 90 requires that parts of particular machines, instruments, or apparatus "are to be classified with the machines, instruments or apparatus of that kind." That note resolves any conflict between sub-

heading 3707.90.60 and subheading 9009.90.00, and makes clear that subheading 9009.90.00 applies to the toner cartridges at issue in this case.

*REVERSED.*