**Slip Op. 03-139**

UNITED STATES COURT OF INTERNATIONAL TRADE

—————————————————————————

RAININ INSTRUMENT CO., INC.,

                *Plaintiff,*

       v.

UNITED STATES,

                *Defendant.*

—————————————————————————

: Court No. 00-11-00514

[Defendant's motion for summary judgment is granted. Plaintiff's cross-motion is denied.]

Decided: October 24, 2003

      Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP (Steven P. Florsheim), for Plaintiff.

      Peter D. Keisler, Assistant Attorney General; Barbara S. Williams, Assistant Branch Director, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Arthur J. Gribbin); Michael W. Heydrich, Office of the Assistant Chief Counsel, International Trade Litigation, Bureau of Customs and Border Protection, U.S. Department of Homeland Security, Of Counsel; for Defendant.

**OPINION**

RIDGWAY, Judge:

      At issue in this case is the proper tariff classification of certain adjustable mechanical pipettes – known as "Pipetman" pipettes – which were imported from France through the port of Boston in 1999 by Plaintiff Rainin Instrument Co., Inc. ("Rainin"). Rainin challenges the decision of the

United States Customs Service ("Customs")[1] denying its protest and classifying the pipettes as "[m]achines and mechanical appliances having individual functions," under subheading 8479.89.97 of the Harmonized Tariff Schedule of the United States ("HTSUS") (1999).[2] Duties were assessed at the rate of 2.5% *ad valorem*. Complaint ¶ 5.[3]

Rainin claims that the pipettes instead are properly classified as "[i]nstruments and apparatus for measuring or checking the flow, level, pressure or other variables of liquids or gases (for example, flow meters, level gauges, manometers, heat meters)," under subheading 9026.80.60, HTSUS, free of duty. Complaint ¶ 6.[4] In the alternative, Rainin contends that the pipettes should be classified as "[p]umps for liquids, whether or not fitted with a measuring device," under subheading 8413.19.00, HTSUS, also duty-free. Complaint ¶ 11.[5]

---

[1]Effective March 1, 2003, the United States Customs Service was renamed the Bureau of Customs and Border Protection of the United States Department of Homeland Security. *See Reorganization Plan Modification for the Department of Homeland Security*, H.R. Doc. 108-32, at 4 (2003).

[2]All references are to the 1999 version of the HTSUS.

[3]Subheading 8479.89.97, HTSUS covers "[m]achines and mechanical appliances having individual functions, not specified or included elsewhere in this chapter; parts thereof: [o]ther machines and mechanical appliances: [o]ther: [o]ther."

[4]Subheading 9026.80.60, HTSUS covers "[i]nstruments and apparatus for measuring or checking the flow, level, pressure or other variables of liquids or gases (for example, flow meters, level gauges, manometers, heat meters), excluding instruments and apparatus of heading 9014, 9015, 9028 or 9032; parts and accessories thereof: [o]ther instruments and apparatus: [o]ther: [o]ther."

[5]Subheading 8413.19.00, HTSUS covers "[p]umps for liquids, whether or not fitted with a measuring device; liquid elevators; part thereof: [p]umps fitted or designed to be fitted with a measuring device: [o]ther."

Jurisdiction lies under 28 U.S.C. § 1581(a) (1994). Customs' classification decisions are subject to *de novo* review pursuant to 28 U.S.C. § 2640 (1994). For the reasons discussed below, the pipettes at issue are properly classified as "[m]achines and mechanical appliances having individual functions," under subheading 8479.89.97, HTSUS. Accordingly, the Government's motion for summary judgment is granted, and Rainin's cross-motion is denied.

## I. Background

The merchandise at issue is a mechanical device made up of a number of different mechanical parts, "including plungers, pistons, adjusting dials, and tip ejectors, all of which are utilized to perform a function." Defendant's Statement of Material Facts ("Def.'s Statement of Facts") ¶ 3 (citations omitted); Plaintiff's Response to Defendant's Statement of Material Facts ("Pl.'s Response to Def.'s Statement of Facts") ¶ 3.

Each Pipetman pipette is fitted with an adjustable micrometer that allows the user to set the desired volume of liquid to be drawn. Plaintiff's Statement of Material Facts ("Pl.'s Statement of Facts") ¶ 4; Defendant's Response to Plaintiff's Statement of Material Facts ("Def.'s Response to Pl.'s Statement of Facts") ¶ 4.[6] Generally, the pipettes

---

[6]The merchandise at issue consists of several models of Pipetman pipettes, in "various sizes, by range of capacity." Memorandum of Law in Support of Plaintiff's Cross Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Brief") at 3; Def.'s Statement of Facts ¶ 2; Pl.'s Response to Def.'s Statement of Facts & 2. The pipettes "are continuously adjustable. For example, the volumetric capacity of the model P-20 can be adjusted over a range of 2 to 20 [microliters] . . ., in increments of 0.02 [microliters]." Pl.'s Brief at 3 (citations omitted). One microliter (as represented by the symbol μL) is 1/1000 of a milliliter. *Id.* *See generally* Pl.'s Brief, Exhs. 1 (sample of a Pipetman pipette), 2 (published description of Pipetman pipettes).

> function through air displacement. . . . [A] vacuum is created by expelling air from the pipette's tip through depression of the push button plunger on the pipette. The tip is then immersed in the liquid of the source container, and the plunger is released, causing the source liquid to be sucked into the pipette tip. The liquid is then expelled into the receiving container by again depressing the plunger, which releases the vacuum on the liquid in the pipette tip.

Pl.'s Statement of Facts ¶ 6. *See also* Def.'s Response to Pl.'s Statement of Facts ¶¶ 4, 6 (same); Pl.'s Statement of Facts ¶ 4 (same). The pipettes are therefore capable of "pick[ing] up a pre-selected quantity of liquid and permit[ting] the transfer of that volume of liquid to another vessel." Def.'s Statement of Facts ¶ 4 (citation omitted). Thus, they may be used both to measure and to transfer fluids.

Finally, each pipette "[w]orks independently [;] it does not have to work in conjunction with another machine, instrument or apparatus to perform its function of picking up . . . liquid and depositing it in another vessel." Def.'s Statement of Facts ¶ 5 (citations omitted). *See also* Pl.'s Response to Def.'s Statement of Facts ¶ 5.

## II. Standard of Review

Under USCIT Rule 56, summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to . . . judgment as a matter of law." USCIT R. 56(c).

Customs classification rulings are reviewed through a two-step process: first, construing the relevant tariff headings, which is a question of law; and second, determining whether the merchandise is properly classified under the headings, which is a question of fact. Bausch & Lomb,

Inc. v. United States, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (*citing* Universal Elecs. Inc. v. United States, 112 F.3d 488, 491 (Fed. Cir. 1997)).

"[S]ummary judgment is appropriate when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is." Bausch & Lomb, 148 F.3d at 1365 (citations omitted). Although the parties here argue for different classifications, they do not disagree as to the nature of the Pipetman pipettes. *See also* Memorandum in Support of Defendant's Motion for Summary Judgment ("Def.'s Brief") at 7-8; Pl.'s Brief at 14. The case is therefore ripe for summary judgment.

While Customs classification decisions do not merit Chevron deference, they are entitled to "a respect proportional to [their] 'power to persuade.'" United States v. Mead Corp., 533 U.S. 218, 235 (2001) (*citing* Christensen v. Harris County, 529 U.S. 576, 587 (2000); Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)). "That power to persuade depends on the thoroughness evident in the classification ruling, the validity of its reasoning, its consistency with earlier and later pronouncements, the formality attendant the particular ruling, and all those factors that give it power to persuade." Mead Corp. v. United States, 283 F.3d 1342, 1346 (Fed. Cir. 2002) (*citing* Mead Corp., 533 U.S. at 219-20; Skidmore, 323 U.S. at 140).

Finally, the court has "[an] independent responsibility to decide the legal issue regarding the proper meaning and scope of the HTSUS terms." Mead Corp., 283 F.3d at 1346 (*citing* Rocknel Fastener, Inc. v. United States, 267 F.3d 1354, 1358 (Fed. Cir. 2001)). *See also* Rollerblade, Inc. v. United States, 112 F.3d 481, 484 (Fed. Cir. 1997) (noting the court's duty to "reach the correct decision") (*quoting* 28 U.S.C. 2643(b)).

## III.  Analysis

The General Rules of Interpretation ("GRIs"), applied in order, provide a framework for the classification of merchandise under the HTSUS, and are considered statutory provisions of law for all purposes.  *See* North Am. Processing Co. v. United States, 236 F.3d 695, 698 (Fed. Cir. 2001); Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998).  "The structure of the GRI[s] controls the point at which each rule comes into play." Pillowtex Corp. v. United States, 171 F.3d 1370, 1374 (Fed. Cir. 1999) (*citing* Mita Copystar Am. v. United States, 160 F.3d 710, 712 (Fed. Cir. 1998)).

Most goods are classified pursuant to GRI 1, which provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the following provisions [Rules 2 through 6]."  The intent of GRI 1 is "to make it quite clear that the terms of a heading and any relative Section or Chapter Notes are paramount, i.e., they are the first consideration in determining classification."  Explanatory Notes at GRI 1(V).[7]  *See also* Orlando Food Corp., 140 F.3d at 1440 ("Only after determining that a product is classifiable under the heading should the court look to the subheadings to find the correct classification for the merchandise.").

---

[7]The World Customs Organization's Harmonized Commodity Description and Coding System: Explanatory Notes (2d ed. 1996) ("Explanatory Notes") function as an interpretative supplement to the HTSUS.  While the Explanatory Notes "do not constitute controlling legislative history," they "are intended to clarify the scope of HTSUS subheadings and offer guidance in interpreting its subheadings." Mita Copystar Am. v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994) (*citing* Lynteq, Inc. v. United States, 976 F.2d 693, 699 (Fed. Cir. 1992)). *See also Guidance for Interpretation of Harmonized System*, 54 Fed. Reg. 35,127 (Aug. 23, 1989).

A.  Heading 8413, HTSUS

Customs classified the pipettes at issue here under heading 8479 – the "basket" provision of chapter 84 – which covers, in relevant part, "[m]achines and mechanical appliances having individual functions, *not specified or included elsewhere in this chapter*." (Emphasis added.)  If – as Rainin postulates – the pipettes can be classified under heading 8413[8] (or, for that matter, under any other heading within Chapter 84), Customs' classification under heading 8479 would, by definition, be incorrect.[9]

---

[8]Rainin contends that if the pipettes are classifiable under both heading 8413 and heading 8479, heading 8413 prevails, based on GRI 3(a).  According to GRI 3(a), "[w]hen . . . goods are, *prima facie*, classifiable under two or more headings, . . . [t]he heading which provides the most specific description shall be preferred to headings providing a more general description."  Rainin reasons that – as between heading 8413 and heading 8479 – classification under heading 8413 would be appropriate, because it is "[t]he heading which provides the most specific description."  Pl.'s Brief at 13 (*quoting* GRI 3(a)).

But, if the pipettes are *prima facie* classifiable under heading 8413, there is no need to resort to GRI 3.  GRI 1 provides that classification is determined "according to the terms of the headings and any relative section or chapter notes."  By its terms, heading 8479 classifies goods "not specified or included elsewhere" in chapter 84, which includes goods covered by heading 8413.

Further, "a machine or appliance which answers to a description in one or more of the headings 8401 to 8424 and at the same time to a description in one or more of the headings 8425 to 8480 is to be classified under the appropriate heading of the former group and not the latter."  Note 2 to Chapter 84, Section XVI, HTSUS.  *See also* Explanatory Note 84.79 (providing that heading 8479, HTSUS "is restricted to machinery having individual functions, which: (a) [i]s not excluded from this Chapter by the operation of any Section or Chapter Note . . . and (b) [i]s not covered more specifically by a heading in any other Chapter of the Nomenclature . . . and (c) [c]annot be classified in any other particular heading of this Chapter . . . .") (emphasis omitted).

[9]Moreover, if the pipettes can be classified as "pumps" under heading 8413, they would not be classifiable under Rainin's primary proposed classification – heading 9026 ("[i]nstruments and apparatus for measuring . . . liquids"), because merchandise classifiable under heading 8413 is expressly excluded from classification under Chapter 90.  *See* Note 1(g) to Chapter 90, Section XVIII, HTSUS (stating that Chapter 90 does not cover "[p]umps incorporating measuring devices,

Heading 8413 covers, in relevant part, "[p]umps for liquids, whether or not fitted with a measuring device." The Government maintains that the Pipetman pipettes are not "pumps" within the meaning of heading 8413, HTSUS. *See* Def.'s Brief at 6-7, 12-15; Def.'s Response Brief at 2, 14-18. The Government makes much of the fact that the pipettes here "are not known, referred to or commercially considered to be pumps." Def.'s Brief at 14. *See also* Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Def.'s Response Brief") at 14 n.8 (noting that "[n]either Rainin nor anyone else refers to Pipetman pipettes as pumps").[10] A review of the record confirms that, indeed, the pipettes at issue were not marketed as "pumps." *See*, *e.g.*, Pl.'s Brief, Exhs. 1 (sample of a Pipetman pipette), 2 (published description of Pipetman pipettes). Even Rainin concedes that the pipettes "are not known as or referred to as 'pumps.'" Pl.'s Brief at 9.

Yet, while the marketing of merchandise is a factor to be considered in determining its classification (*see* Def.'s Brief at 1, and cases cited there), it is not dispositive. *See* <u>Russ Berrie & Co. v. United States</u>, 76 Cust. Ct. 218, 226 (1976) (*citing* <u>S.Y. Rhee Imps. v. United States</u>, 486 F.2d 1385, 1387 (CCPA 1973); <u>Novelty Imp. Co. v. United States</u>, 53 Cust. Ct. 274 (1964); <u>United States v. Ignaz Strauss & Co.</u>, 37 CCPA 32 (1949)).

---

of heading 8413"). *See also* Pl.'s Brief at 12. *See generally* Section III.B (discussing Rainin's argument for classification under heading 9026).

[10]The Government further emphasizes that – in addition to the devices at issue here – Rainin also sells devices specifically called "peristaltic pumps," which are "substantially different from the [imported] Pipetman pipettes" and which "use[ ] a series of rollers to continuously pump liquids." Def.'s Response Brief at 14.

Rainin contends that "the tariff provision for pumps has been given a broad meaning, and includes articles that are not referred to as pumps." Def.'s Brief at 9. As the Government notes, however, the primary characteristic of a pump (at least for tariff classification purposes) is its use for "continuously displacing volumes of liquid." Pl.'s Brief at 13. The Explanatory Notes to heading 8413 expressly state that the heading covers devices "for raising or otherwise *continuously displacing* volumes of liquids . . . whether they are operated by hand or by any kind of power unit, integral or otherwise." Explanatory Note 84.13 (emphasis added). *See also* Def.'s Brief at 13; Def.'s Response Brief at 16-18.[11]

---

[11]The Explanatory Notes to heading 8413 also explain that "the machines of [that] heading can be subdivided according to their system of operation," and list the different types of pumps classifiable under heading 8413. The Government asserts that, of the pumps listed in Explanatory Note 84.13, the Pipetman pipettes most closely resemble "reciprocating positive displacement pumps." Def.'s Brief at 13-14. Like the pipettes, reciprocating positive displacement pumps "use the linear suction or forcing action of a piston or plunger driven within a cylinder." Explanatory Note 84.13(A). However, reciprocating positive displacement pumps have inlets and outlets, which are regulated by valves, which the pipettes here lack. Def.'s Brief at 14.

Rainin cites Hancock Gross, Inc. v. United States, 64 Cust. Ct. 97 (1970) as authority for the proposition that "pistons, valves, [and] other moving parts" are not "an essential attribute of all types of pumps." 64 Cust. Ct. at 101-02. But the Government does not here claim that *all* pumps must have valves. Rather, the Government argues that – consistent with the Explanatory Notes – a pump employing the reciprocating piston principle (which is there basis of the pipettes at issue) must have valves in order to function and be classified as a pump. Def.'s Response Brief at 15. Hancock involved a "venturi tube" device, and is therefore not applicable here.

As the Government explains, the requirement for valves in reciprocating positive displacement pumps "is logical because, in order to function as pumps, they must be capable of pumping liquid from a source (input) to a destination (output)." Def.'s Response Brief at 15-16. In the instant case, "[b]ecause the pipettes have no valves, once the piston pulls the liquid into the cylinder . . . the pipette must be removed from the source container and placed into the destination container before liquid can be ejected." Def.'s Response Brief at 16. In short, "[a] pump employing a reciprocating piston principle must have valves in order to be classified as a pump because it is the valves that enable this particular device to continuously displace volumes of liquids." *Id.* As discussed above, the pipettes at issue lack any such valves.

Rainin seeks to minimize the "continuous displacement" criterion by emphasizing that it derives from the Explanatory Notes, and by arguing that the Explanatory Notes are not "conclusive." Pl.'s Brief at 11. However, the Explanatory Notes cannot be so readily dismissed. The trade community, Customs and the courts all have recognized that they are a vital supplement to the HTSUS, serving to clarify the scope of headings and to offer guidance in interpretation. *See*, *e.g.*, Mita Copystar Am., 21 F.3d at 1082 (*citing* Lynteq, Inc. v. United States, 976 F.2d 693, 699 (Fed. Cir. 1992)).

Rainin asserts broadly that the "continuous displacement" criterion is inconsistent with "case law and lexicographic authorities." Pl.'s Brief at 11. But nothing in the dictionary definitions cited in Rainin's briefs can be read to suggest that the continuous displacement of liquid is not a defining characteristic of a pump. *See generally* Pl.'s Brief at 10-11 (quoting various dictionary definitions). Rainin's reliance on Hancock Gross, Inc. v. United States, 64 Cust. Ct. 97 (1970) and Fedtro, Inc. v. United States, 65 Cust. Ct. 35 (1970) is similarly misplaced. *See* Pl.'s Brief at 9-10; Plaintiff's Reply to Defendant's Response in Opposition to Plaintiff's Cross Motion for Summary Judgment ("Pl.'s Reply Brief") at 8. Nothing in those cases indicates that the "continuous displacement" of liquid is not a defining characteristic of a pump.

Finally, Rainin contends that, even if the "continuous displacement" of liquid is a defining characteristic of a pump, a user of a Pipetman pipet "can repetitively draw measured amounts of fluid from a source container and deliver the same to a receiving container." Thus, Rainin asserts, Pipetman pipettes "are capable of . . . continuous use." Pl.'s Brief at 11. Rainin strains to analogize "the repetitive depression and release of the push button plunger on the pipette" to "the repetitive

pumping of the lever on a classic hand operated water pump, or the repetitive squeezing of the cylinder or chamber on the 'portable siphon pumps' involved in Fedtro." Pl.'s Brief at 11. But the attempt at analogy fails.

The Government points out that squeezing the cylindrical portable siphon pump at issue in Fedtro *continuously* displaced water from one container to another – specifically, in the courtroom demonstration, from a pitcher to a cup. *See* Def.'s Response Brief at 17 (describing operation of Fedtro pump). In contrast, the pipettes at issue here "are only capable of *intermittently* transferring minute amounts of liquid from one container to another, and it is the *physical movement of the pipettes from one container to another that effects the transfer of liquid*, not a pumping mechanism within the pipettes." Def.'s Response Brief at 17 (emphasis added). *See also* Def.'s Brief at 13 (noting that the pipettes "do not displace volumes of liquid continuously, but rather displace a volume of liquid intermittently as part of their normal operation," and that, "unlike a pump, which is capable of continuous displacement of liquids at one location and normally does so as part of its routine operation, these pipettes are designed for discrete displacement of fluids").

The Government correctly observes that "[i]ntermittently carrying minute amounts of liquid from a source container to a destination container" simply is not "the equivalent of continuously displacing volumes of liquids by means of a pump." *Id*. at 18. Further, "[w]ith the Pipetman pipettes, the transfer of the liquid requires the physical moving of the pipette from one container to the other, an operation not necessary with a pump." *Id*.

As the court stated in Fedtro, classification in this case is "controlled by what the imported article was constructed and designed to do . . . ." Fedtro, 65 Cust. Ct. at 44. Pipetman pipettes were

not constructed or designed as "pumps" within the meaning of heading 8413, and cannot be classified thereunder.

## B.  Heading 9026, HTSUS

Rainin's primary claim is that Pipetman pipettes are properly classifiable under heading 9026, HTSUS, which covers "[i]nstruments and apparatus for *measuring* or checking the *flow, level, pressure or other variable* of liquids or gases (for example, flow meters, level gauges, manometers, heat meters), excluding instruments and apparatus of heading 9014, 9014, 9028 or 9032; parts and accessories thereof." (Emphasis added.)[12]  To that end, Rainin argues – in sum and substance – that volume is a variable of liquids, and that the pipettes are instruments whose primary purpose is to measure the volume of liquids.  *See* Pl.'s Brief at 4-6; Pl.'s Reply Brief at 2-5.

The Government denies that the pipettes' primary purpose is measurement, and asserts that the pipettes are instead used principally to move and dispense liquids. *See, e.g.*, Def's Brief at 6, 8-9; Def.'s Response Brief at 12-13.  Specifically, according to the Government:

> [T]he Pipetman [pipettes] only measure[ ] in the sense that when the pipettes are adjusted for a specific volume, [that] volume is picked up and dispensed.  However, the Pipetman pipettes have not been used to "measure" in the sense of determining an unknown volume. . . . In the case of the Pipetman [pipette], it is not used to ascertain the quantity of a liquid, but instead is used to deliver a selected amount of liquid.

---

[12]If the pipettes are classifiable as "[i]nstruments and apparatus for measuring . . . liquids" under heading 9026, HTSUS, then they cannot also be classified as "[m]achines and mechanical appliances having individual functions" under heading 8479, HTSUS.  *See* Note 1(m) of Section XVI, HTSUS (noting that Section XVI, which includes heading 8479, HTSUS, "does not cover . . . [a]rticles of chapter 90").  *See also* Pl.'s Brief at 12-13.

Def.'s Brief at 9.

Rainin rejects the Government's argument as a "distinction without a difference." Pl.'s Brief at 5. Rainin contends that measuring devices can be used both "to measure a predetermined quantity" and to "determine unknown quantities." *Id.* As an example, Rainin cites a carpenter's rule which, it asserts, "is primarily used to measure a precise length of lumber, although it could also be used to determine the unknown length of [a] piece of lumber." *Id.* Rainin analogizes the carpenter's rule to the pipettes at issue here, arguing that "[t]o the same extent the pipette is primarily used to measure a precise volume of liquid, although it could also be used to determine the unknown liquid volume of a container." *Id.*

Whatever the validity of Rainin's example and analogy, there is – as the Government notes – a larger point: Even if the measurement of a variable (*i.e.*, the volume) of liquids were the purpose of the pipettes, the pipettes still would not be classifiable under heading 9026, because the Explanatory Notes for the heading indicate that the variables measured by the devices classified under this heading are *process* variables. *See* Explanatory Note 90.26 (noting that heading 9026 "covers instruments and apparatus for measuring or checking the flow, level, pressure, kinetic energy or other *process variables* of liquids or gases." (Emphasis added.) See also Def.'s Brief at 9; Def.'s Response Brief at 3-4[13]

The Government's position is buttressed by the exemplars named in heading 9026 – flow

---

[13]Rainin argues that heading 9026 does not include the term "process," and that the Explanatory Notes "are not controlling legislative history." Pl.'s Brief at 7. However, as discussed in Section III.A above, the Explanatory Notes – while not controlling – are highly authoritative. *See also* Def.'s Brief at 6-7 (discussing history and purpose of, and weight customarily accorded to, Explanatory Notes).

meters, level gauges, manometers and heat meters. The pipettes at issue are fundamentally different in nature and function from the enumerated devices. Unlike the exemplars, the pipettes are not used to (and cannot be used to) measure the process (dynamic) variables of liquids. Def.'s Brief at 11-12; Def.'s Response Brief at 7-8.

The Pipetman pipettes thus are not instruments of measurement within the meaning of heading 9026, because they do not measure the type of variable to which the provision refers, and because they have a different specific primary function. Accordingly, they cannot be classified thereunder.

### C. Heading 8479, HTSUS

Heading 8479, HTSUS classifies, in relevant part, "[m]achines and mechanical appliances having individual functions." According to the Explanatory Notes, "[t]his heading is restricted to machinery having individual functions . . . . For this purpose the following are to be regarded as having 'individual functions': (A) Mechanical devices, with or without motors or other driving force, whose function can be performed distinctly from and independently of any other machine or appliance." Explanatory Note 84.79.

Customs' rulings here are persuasive, and are therefore entitled to deference. As Customs has found, the pipettes are mechanical devices with individual functions (i.e., measuring and transferring liquids) that function "independently of any other machine or appliance." *See* HQ 957301 (Jan. 18, 1995) ("[T]he process of utilizing the plunger to operate the pipette, and the use of the pistons to control accuracy, is one that is mechanical. The user must exert force to push down the plunger to gather the fluid, then release force to hold the liquid in the pipette."). *See also* NY

F81392 (Jan. 20, 2000) (classifying "mechanical pipettes" imported by Rainin under heading 8479, HTSUS). *See generally* Def.'s Brief at 3, 12, 16-18. Finally, the pipettes are "not excluded from [Chapter 84, HTSUS] by the operation of any Section or Chapter Note," they are "not covered more specifically by a heading in any other Chapter [of the HTSUS]," and they "[c]annot be classified in any other particular heading of [Chapter 84, HTSUS]." Explanatory Note 84.79.

Thus, the classification of the Pipetman pipettes is properly determined by the terms of heading 8479, HTSUS.

## IV.  Conclusion

Customs properly classified the pipettes here at issue as "[m]achines and mechanical appliances having individual functions," under subheading 8479.89.97, HTSUS. The Government's motion for summary judgment is therefore granted, and Rainin's cross-motion is denied.

Judgment will enter accordingly.

_____
Delissa A. Ridgway, Judge

Decided:   October 24, 2003
                New York, New York