CASIO, INC., Plaintiff/Cross–Appellant,

v.

The **UNITED STATES**, Defendant–
Appellant.

Nos. 95–1099, 95–1111.

United States Court of Appeals,
Federal Circuit.

Jan. 16, 1996.

Steven P. Florsheim, Grunfeld, Desiderio, Lebowitz & Silverman, LLP, New York City, argued for plaintiff/cross-appellant.

Susan Burnett Mansfield, Department of Justice, New York City, argued for defendant-appellant. Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Joseph I. Liebman, Attorney in Charge, International Trade Field Office and John J. Mahon, Attorney, Department of Justice, Commercial Litigation Branch, New York City, were on the brief for defendant-appellant. Also on the brief was Sheryl A. French, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, New York City, of counsel.

Before ARCHER, Chief Judge, MICHEL and SCHALL, Circuit Judges.

MICHEL, Circuit Judge.

The United States appeals the decision of the United States Court of International Trade, No. 89–07–00385, reclassifying 5 of 38 electronic musical synthesizer models, imported by Casio, Inc. ("Casio"), as "electrical articles which produce sound," Tariff Schedules of the United States ("TSUS")[1] 688.34, as opposed to their original classification as "electronic musical instruments," TSUS 725.47. Casio cross-appeals the court's determination that the remaining models of imported electronic musical synthesizers were properly classified as "electronic musical instruments." We affirm.

## I. BACKGROUND

Casio imports into the United States electronic musical synthesizers.[2] All of the imported synthesizer models were classified by the Customs Service, upon entry into the United States, as "Electronic musical instruments: Other," TSUS 725.47, with a duty rate of 6.8% ad valorem.

Casio timely challenged the classification by filing suit in the United States Court of International Trade. Casio argued that these synthesizers were improperly classified as electronic musical instruments and should instead have been classified under TSUS 688.34 as "Electrical articles and electrical parts of articles, not specifically provided for: Electrical articles using pre-programmed digital integrated circuits to produce sound," dutiable at the rate of 3.9% ad valorem.

Each of the synthesizers at issue in this case includes at least one of the following features.

1. **ROM Pack**—computer chip driven device containing ROM (read only memory) programmed to play a melody on the keyboard or to guide in a teaching function (e.g., to light indicator lights associated with a specific key).

2. **Sampling**—the ability to capture a sound (e.g., a dog bark) and then play it back at different pitches (e.g., "Jingle Bells" as done by barking dogs).

3. **Sequencer**—a device that remembers a sequence of key depressions, including note, duration, and sometimes pressure, and then plays it back. A multiple track sequencer allows additional sounds to be added on top of a

---

1. It appears the articles were classified under the TSUS and not the more recent Harmonized Tariff Schedules of the United States ("HTSUS") because the importations at issue occurred in 1987 and 1988, while the HTSUS did not supersede the TSUS until 1989. See, e.g., Nidec Corp. v. United States, 68 F.3d 1333, 1335 (Fed.Cir. 1995).

2. At issue in this case are the following Casio models: CDP–3300, CPS–101, CPS–300, CT–360, CT–370, CT–450, CT–510, CT–607, CT–630, CT–640, CT–460, MT–640, EP–10, EP–20, EP–30, HT–3000, HT–6000, MT–140, MT–205, MT–240, MT–520, MT–540, MT–600, PMP–300, PMP–400, PMP–500, PT–10, PT–87, PT–180, SK–1, SK–5, SK–8, SK–10, VZ–1, VZ–10M, HZ–600, MG–510 and PG–380.

previously recorded sequence. Using this function, a musician can record a background beat and additional musical phrases to the sequencer, and then play the melody on top.

4. **Auto-rhythm**—generates a rhythm selected from a number of pre-programmed rhythms (*e.g.*, country, reggae, samba, waltz, etc.). The musician can then play a melody over the generated rhythm.

5. **Auto-accompaniment**—automatically generates an accompaniment of "fill-in" notes for the keys depressed on the right side of the keyboard.

6. **Mixer**—A device that permits the adjustment of relative volumes of various functions, such as auto-rhythm and the keys being pressed by the musician.

Inasmuch as the imported articles contained substantial non-musical instrument functions and features, Casio claimed, the articles were "more than" electronic musical instruments and could not be classified as such.

In addition, Casio argued that five of the imported models, VZ–1, VZ–10M, HZ–600, MG–510 and PG–380, could not be classified as electronic musical instruments because they were imported and sold in commerce without an amplifier and speakers or headphones and thus did not make an audible sound as imported. The ability to make an audible sound, they argued, was a requirement for classification as an electronic musical instrument.

The trial court concluded that the Casio synthesizers were not "more than" electronic musical instruments, finding that "[t]he primary design and function of the features at issue appear to become part of and enhance the musical instruments in which they are found. The features that are part of the subject articles make playing the instruments easier." *Casio, Inc. v. United States*, No. 89–07–00385, slip op. at 11, 1994 WL 548786 (Ct.Int'l Trade Oct. 7, 1994). It did conclude, however, that the decision of one of our predecessor courts in *Montgomery Ward & Co., Inc. v. United States*, 499 F.2d 1283 (CCPA 1974), requires that an electronic mu-

sical instrument make a sound to be considered as such, and therefore, Casio synthesizer models imported without amplifier or speakers should be classified under TSUS 688.34.

## II. STANDARD OF REVIEW

■ Proper classification of imported merchandise under an appropriate tariff provision "entails a two-step process of (1) ascertaining the proper meaning of specific terms within the tariff provision and (2) determining whether the merchandise at issue comes within the description of such terms as properly construed. The first step is a question of law which we review *de novo* and the second is a question of fact which we review for clear error." *Marcel Watch Co. v. United States*, 11 F.3d 1054, 1056 (Fed.Cir.1993) (citing *Stewart–Warner Corp. v. United States*, 748 F.2d 663, 664–65, 3 Fed.Cir. (T) 20, 22 (1984)). "The ultimate issue as to whether particular imported merchandise has been classified under an appropriate tariff provision is a question of law subject to *de novo* review," and the resolution of that ultimate issue involves the two-step process outlined above. *Marcel Watch*, 11 F.3d at 1056.

## III. ELECTRONIC SYNTHESIZERS WITH AMPLIFIERS AND SPEAKERS

■ The "electronic musical instrument" classification, under which the Customs Service classified all of Casio's electronic musical synthesizer models, is an *eo nomine* designation, *i.e.*, "one which describes [a] commodity by a specific name, usually one well known to commerce." *Black's Law Dictionary* 535 (6th ed. 1990). When an object "is in character or function something other than as described by a specific statutory provision— either more limited or more diversified—and the difference is significant, it cannot find classification within such [*eo nomine* ] provision." *Robert Bosch Corp. v. United States*, 63 Cust.Ct. 96, 103–04, 1969 WL 13787 (1969). Casio argues that because each of the models of electronic musical synthesizers in question has at least one additional feature,[3] which is not a musical instrument fea-

---

3. Each model has one or more of the following

features: ROM–Pack melody or teaching aids,

ture, each is "more than" an electronic musical instrument and cannot be classified under TSUS 725.47.

■ Casio's argument, however, is unpersuasive. On the contrary, an article which has been improved or amplified but whose essential characteristic is preserved or only incidentally altered is not excluded from an unlimited *eo nomine* statutory designation. *Id. See also United Carr Fastener Corp. v. United States,* 54 CCPA 89, C.A.D. 913, 1967 WL 8910 (1967). The criterion is whether the item "possess[es] features *substantially in excess* of those within the common meaning of the term." *Id.* at 91 (emphasis added). Upon reviewing all of the evidence, including Casio's expert witnesses, the trial court determined that the Casio synthesizers were not "more than" musical instruments and found that the primary purpose of the additional features was to "enhance the musical instruments in which they [were] found" making the instruments easier to play with a greater variety of voices (sounds). *Casio,* slip op. at 11.

■ The trial court's finding that the synthesizers do not possess features substantially in excess of those within the common meaning of the term "electronic musical instruments" is not clearly erroneous. All of the additional features are designed primarily to make it easier for a musician to create music or embellish the sound he or she would normally be able to produce. The auto-rhythm and auto-accompaniment features allow inexperienced users to create chords and accompaniment with the press of a key, and the sequencer features allow a single musician to play, in essence, multiple instruments simultaneously. The only feature which does not appear to enhance a musician's ability to play the instrument is the one that plays prerecorded melodies. However, Casio admitted that this may be a musical instrument feature because it is similar in nature to a music box, which was specifically designated a musical instrument by Congress. TSUS 725.50.

sampling, effects device, sequencer, auto-rhythm,

## IV. ELECTRONIC SYNTHESIZERS WITHOUT AMPLIFIERS AND SPEAKERS

Casio electronic synthesizer models VZ–1, VZ–10M, HZ–600, MG–510 and PG–380 do not contain amplifiers or speakers and therefore cannot be heard without either attaching the products to external amplifier/speaker systems (*e.g.,* a stereo system) or by plugging in a pair of headphones. Models VZ–1 and HZ–600 are high end model electronic keyboard synthesizers, and models MG–510 and PG–380 are guitar-like electronic synthesizers. In addition, model VZ–10M requires a controller (*e.g.,* a keyboard or other Musical Instrument Digital Interface compliant device) in order to operate.

In *Montgomery Ward,* the United States Court of Customs and Patent Appeals held that electronic organ components imported without an amplifier and speaker or a cabinet could not together be classified as an electronic musical instrument but were instead properly classifiable as electronic musical instrument parts. The court first looked to the definition of "electronic musical instruments" as defined in headnote 2(c), subpart A, part 3, schedule 7, TSUS:

> (c) the term "electronic musical instruments" embraces all musical instruments in which the sound is generated electrically, and conventional-type instruments not suitable for playing without electrical amplification, but the term does not include conventional-type instruments, fitted with electrical pickup and amplifying devices, when the instrument is suitable for playing without such amplification.

Although it was undisputed that the organ's sound was generated electrically, the court found that "[t]he imported components do not generate sound ... they generate electric currents only. The speaker ... acts as a transducer to convert electrical energy into sound. Until this occurs, there is no sound." *Montgomery Ward,* 499 F.2d at 1288. This led the court to hold as follows:

> We deem it essential to its classification as a "musical instrument"—in the absence of some indication of legislative intent to the contrary—that there be a capability in an

auto accompaniment and/or mixer.

organ of producing sound when played upon. *Id.* The court further emphasized its position that audible sound was required for proper classification of an article as an electronic musical instrument in a later section of the opinion discussing the adequacy of the assignment of error. The court stated that

> [a]ppellee has raised a question about the adequacy of the assignment of errors in the notice of appeal to this court to "preserve for review the issue of whether an unfinished electronic musical instrument must be capable of producing audible sound * * * in order to be classified as an electronic musical instrument for tariff purposes." It will be recognized that said issue goes to the very essence of this appeal.

*Id.* Thus, *Montgomery Ward* clearly establishes, as precedent, the proposition that "a capacity to produce the electronic sound at the time of importation is the *sine qua non* for classification of a musical instrument under item 725.47." *Universal Accordion Factory v. United States,* 73 Cust.Ct. 208, 1974 WL 25838 (1974).

 This court has adopted as precedent the holdings of its predecessor courts, the United States Court of Claims and the United States Court of Customs and Patent Appeals, and may only overrule those prior holdings by sitting *in banc. South Corp. v. United States,* 690 F.2d 1368, 1370, 215 USPQ 657, 658 (Fed.Cir.1982). Without a contrary, intervening decision of the United States Court of Customs and Patent Appeals or this court sitting *in banc,* we are bound by the pronouncement in *Montgomery Ward* and must conclude that the Casio synthesizer models that cannot make an audible sound as imported are not properly classified as electronic musical instruments under TSUS 725.47.

The government contends that the applicable law found in *Montgomery Ward* had been clarified by the subsequent decision in *Daisy–Heddon, Div. Victor Comptometer Corp. v. United States,* 600 F.2d 799 (CCPA 1979). In *Daisy–Heddon,* the court resolved and clarified the competing tariff provisions for unfinished articles and the various TSUS items pertaining to parts by holding that a substantially complete article, despite the omission of an essential part, is classifiable as an unfinished article as opposed to an article part. *Id.* at 802. The court set forth a number of factors to use in determining whether articles (in that case fishing reels) were substantially complete and thus properly classified as unfinished articles. *Id.* at 803. The government argues that, under the *Daisy–Heddon* factors, the Casio synthesizers are "substantially complete" electronic musical instruments and should be classified as such.

The government's reliance on *Daisy–Heddon* is misplaced. *Daisy–Heddon* sets forth a means of determining whether an article is properly classified as an unfinished article or an article part. The synthesizers at issue in this matter are neither unfinished articles nor article parts. Moreover, *Daisy–Heddon* does not speak to the specific proposition set forth in *Montgomery Ward* and determinative in this matter: that an article must make an audible sound as imported to be properly classified as an electronic musical instrument.

Alternatively, the government argues that the five synthesizers are properly classifiable as "Musical instrument parts not specifically provided for: Other," TSUS 726.90. The government points out that the court in *Montgomery Ward* classified the electronic organ components as parts of an electronic musical instrument even though, when assembled, they could not produce an audible sound. As opposed to the court in *Montgomery Ward,* we do not have musical instrument parts before us. As properly found by the trial court, these "articles as imported are complete articles of commerce and are sold to the public in their imported condition." *Casio,* slip op. at 13. Whereas the organ components in *Montgomery Ward* could appropriately be classified as musical instrument parts, the synthesizers at issue in this case cannot. Accordingly, the trial court properly reclassified the imported synthesizer models incapable of producing sound under TSUS 688.34.

CONCLUSION

The judgment of the Court of International trade as to the classification of all Casio electronic synthesizer models is

*AFFIRMED.*