BRYSON, Circuit Judge,
dissenting.
I respectfully dissent. The Court of International Trade upheld Customs’ classification of the goods at issue in this case as “travel, sports and similar bags” within HTSUS 4202.92.30. That determination should be affirmed. Additional Note 1 to chapter 42 of the HTSUS tells us that this category includes goods “of a kind designed for carrying clothing and other personal effects during travel, including backpacks and shopping bags[.]” As an eo nomine provision, that subheading encompasses “all forms of the named article.” Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed.Cir.1999). The fact that an article features an improvement does not remove it from the statutory class. See Casio, Inc. v. United States, 73 F.3d 1095, 1098-99 (Fed.Cir.1996). To be sure, there comes a point at which an “improvement” amounts to such a fundamental change in an item that the item cannot fairly be classified as a member of the eo nomine class. The majority concludes that the line has been crossed in this case. The Court of International Trade came to a contrary conclusion, and in my view that court’s highly factual determination cannot be said to be clearly erroneous. See id. at 1098.
In holding that the products at issue are not backpacks, the majority relies heavily on its determination that the subject goods are sold for higher prices than traditional backpacks. To support its conclusion, the majority cites an article that appears in a magazine that is directed toward runners and as well as several retail catalogs that were admitted into evidence. The prices listed for backpacks that include a hydration component and for backpacks without that feature overlap considerably, and the record does not indicate that the price of backpacks having a hydration component is so out of line with the price of backpacks lacking that feature as to suggest clear error in the trial court’s finding.
While it is true that the way particular products are marketed can affect whether they should be viewed as being members of an eo nomine class, the evidence in the record on that score is mixed. CamelBak’s Vice President for Marketing and Product Management stated in his deposition testimony that product placement varies from retailer to retailer. He explained that many retailers place cycling-oriented articles with other cycling-oriented hydration products. But he also stated that some retailers sell the subject articles alongside backpacks not having a hydration component:
Q: [T]he hydration systems might be sold right alongside backpacks or packs that don’t have hydration systems in them?
A: They will be sold along side. Although in most of our retailers, there is a specific section in the department for, say, outdoor hydration systems. So there will be a day pack wall as the technical term, and there will be outdoor day pack hydration systems, and then there will be other packs that are not hydration systems.
That testimony lends support to the trial court’s finding that the subject articles áre properly classified in the eo nomine category for backpacks.
The majority points out that in its promotional and sales literature CamelBak refers to the subject articles as “hydration packs.” That point, however, does not carry much probative force. It is not surprising that CamelBak has selected the adjective “hydration” to modify “pack,” since *1371 the subject articles feature a useful and desirable hydration functionality not found in all backpacks. As is the case with any improved good, consumers who choose to purchase a backpack including a hydration component presumably desire just that: a backpack improved by the addition of a hands-free hydration system. A backpack equipped with a flashing light for use by pedestrians or cyclists using dark streets at night might be referred to as a “safety light backpack,” and be sold to consumers looking for the safety light feature, but that improvement would not be a sufficient change to take such a backpack out of the eo nomine category for backpacks. Moreover, the evidence does not show that there is a rigid distinction between the terms backpack, daypaek, and hydration pack. For instance, the article from the running magazine compares the price and functionality of backpacks, daypacks, and hydration packs. And in its promotional material, CamelBak refers to one of its products as a daypaek, suggesting that even the importer believes that a hydration pack can also be a daypaek.
Importantly, CamelBak’s promotional literature does not emphasize only the hydration component of its packs. It also touts the packs’ storage and cargo-carrying functionality. CamelBak’s 2003 catalog tells consumers that the “Mule” product “integrates increased cargo capacity” with CamelBak’s most recent developments in hands-free hydration technology. CamelBak describes the “Hawg” product as a “Technical Cycling Pack.” The “Hawg,” according to CamelBak, is “[bjuilt for haulin’ down a trail” and “holds 100 oz of water[ ] and enough gear, clothing, and food for extended rides.” And the “SnowDAWG,” which CamelBak describes as a “Versatile Winter Day Pack,” is said to allow its purchasers to “Haul it all! Stuff in an extra layer, a pair of mittens, and a mid-morning snack, plus enough water for your snowshoeing, cross-country skiing, or sledding adventure.”
In light of the record before it, the trial court did not clearly err in concluding that the subject imports are improved backpacks, classifiable in their entirety under subheading 4202.92.30 of the HTSUS. Because GRI 1 controls this case, there is no need to remand for a GRI 3(b) “essential character” analysis. I would affirm the judgment of the Court of International Trade.