# United States Court of Appeals for the Federal Circuit

---

**HOME DEPOT U.S.A., INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2018-1206

---

Appeal from the United States Court of International Trade in No. 1:14-cv-00061-RWG, Senior Judge Richard W. Goldberg.

---

Decided: February 15, 2019

---

WILLIAM RANDOLPH RUCKER, Drinker Biddle & Reath LLP, Chicago, IL, argued for plaintiff-appellant.

EDWARD FRANCIS KENNY, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee. Also represented by AMY RUBIN; JEANNE DAVIDSON, JOSEPH H. HUNT, Washington, DC; BETH C. BROTMAN, Office of the Assistant Chief Counsel, United States Bureau of Customs and Border Protection, United States Department of Homeland Security, New York, NY.

————————————

Before DYK, BRYSON, and CHEN, *Circuit Judges.*

BRYSON, *Circuit Judge.*

This tariff classification case comes to us from the Court of International Trade ("the Trade Court"). The case involves the proper classification under the Harmonized Tariff Schedule of the United States ("HTSUS") of certain products imported by appellant Home Depot U.S.A., Inc. ("Home Depot").

The products are doorknobs with integral locks, such as those used on the outer entry doors of homes. U.S. Customs and Border Protection ("Customs") classified the products as locks under HTSUS heading 8301, and the Trade Court affirmed. Home Depot argues that the products should have been classified under HTSUS heading 8302 as metal fittings for doors, including metal doorknobs.

We vacate the decision of the Trade Court and hold that the products are properly classified as composite goods within the meaning of HTSUS General Rule of Interpretation ("GRI") 3(b). We remand to the Trade Court to make a finding as to the "essential nature" of the composite goods, as directed by GRI 3(b), in order to determine under which of the two competing headings the goods should be classified.

I

Home Depot sells doorknobs of several different types. Some, known as passage knobs, provide a means of latching and opening a door, but contain no locking mechanism on the knobs on either side of the door. Passage knobs are used on interior doors when no provision for privacy is desired. Other knobs, known as privacy knobs, have a locking mechanism on one side of the door but not the other. The locking mechanism typically consists of a device known as a "thumbturn" that can be turned by hand to lock the door

from one side; the knob on the other side of the door typically has some form of emergency override but otherwise does not have a locking or unlocking mechanism. Privacy knobs are used for doors to rooms such as bedrooms or bathrooms for which privacy is desired. Knobs in the third class, known as entry knobs, are the type of knobs at issue in this case. The subject entry knobs all have a keyed cylinder lock mechanism by which the door can be locked and unlocked by a key from the outside, and they all have a thumbturn by which the door can be locked and unlocked from the inside.

The subject imported articles are four types of Defiant-brand entry knobsets. The knobsets are primarily made of steel, and each consists of an interior knob assembly, an exterior knob assembly, a key cylinder, a latch mechanism assembly, a flanged strike plate, and mounting hardware.

The articles were entered between July and December 2012 and liquidated between May and November 2013. Customs liquidated the articles under HTSUS subheading 8301.40.6030, which covers "locks (key, combination or electrically operated), of base metal," and in particular "[d]oor locks, locksets and other locks suitable for use with interior or exterior doors (except garage, overhead or sliding doors)." Home Depot protested Customs' classification of the merchandise. Home Depot argued that the articles should have been liquidated under HTSUS subheading 8302.41.60, which covers "[b]ase metal . . . fittings and similar articles suitable for . . . interior and exterior doors." Customs denied the protest, after which Home Depot filed this action in the Trade Court.

On cross-motions for summary judgment, the Trade Court held that Customs had appropriately classified the subject articles under HTSUS heading 8301. The court therefore denied Home Depot's motion for summary judgment and granted the government's cross-motion for summary judgment.

The Trade Court concluded that the subject articles are described in whole by heading 8301, in that (1) the articles are made of base metal, (2) each article is a "lock," as it is a "device for securing a door consisting . . . of a bolt or system of bolts propelled and withdrawn by a mechanism by a key, dial, etc.," and (3) each article is "key-operated," because "a key produces an appropriate effect of locking or unlocking the device." The court explained that "knobs can be, and are here, parts of a lock." A lock, the court added, "is a multi-component device, of which one component is a lever. In some types of locks, the lever is a door knob."

The court held that the subject articles are not described in whole by heading 8302. While acknowledging that the articles are clearly "knobs for doors," as described in Explanatory Note (D)(7) to heading 8302, the court noted that the articles nonetheless constitute more than simply doorknobs. Each article, the court explained, "is a device for securing a door, consisting of many parts. Together, those parts constitute a lock. The interior and exterior knobs are just two of those many parts." For that reason, the court concluded that although "the subject articles *include* 'knobs for doors, including those for locks' [as provided in Explanatory Note (D)(7) for heading 8302], the subject articles are not described in whole by heading [8302] or by the term 'knobs for doors.'"

The court added that the doorknob components of the subject articles "do not render the subject articles 'composite goods' subject to classification under GRI 3(b)." According to the court, that is because the articles are not prima facie classifiable under more than one heading, but instead are described in whole by heading 8301 and only by heading 8301.

Home Depot appealed to this court. We review the Trade Court's grant of summary judgment without deference. We also afford de novo review to questions of law, including the interpretation of the terms of the HTSUS.

Factual findings of the Trade Court, including which heading the merchandise falls within, are reviewed for clear error. *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011).

## II

Under GRI 1, a court must determine the appropriate classification for particular goods according to the terms of the headings and any relevant Section and Chapter Notes. Unlike the headings and the Section and Chapter Notes, the Explanatory Notes for the HTSUS headings are not legally binding or dispositive, but "may be consulted for guidance and are generally indicative of the proper interpretation of the various HTSUS provisions." *BenQ Am. Corp. v. United States*, 646 F.3d 1371, 1376 (Fed. Cir. 2011); *Millennium Lumber Distrib., Ltd. v. United States*, 558 F.3d 1326, 1328–29 (Fed. Cir. 2009); *Agfa Corp. v. United States*, 520 F.3d 1326, 1329 (Fed. Cir. 2008).

On appeal, Home Depot argues that the Trade Court erroneously characterized the subject articles as locks classifiable under heading 8301. Instead, according to Home Depot, the court should have held them to be classifiable under heading 8302 as "[b]ase metal mountings, fittings and similar articles suitable for . . . doors." For its part, the government argues that the Trade Court was correct to rule that the subject articles are key-operated locks under heading 8301, and that the fact that doorknobs make up part of the overall locking mechanism does not alter the fact that the products, viewed as a whole, are locks.

We conclude that the products are prima facie classifiable under both headings and that the case must be resolved by resort to GRI 3, which deals with articles that are classifiable under two or more headings.

### A. Heading 8301

The subject articles clearly contain locks. Home Depot admits as much. Home Depot's argument that the lock

components of the subject articles do not fall within heading 8301 depends entirely on Home Depot's contention that the subject locks are not "key-operated locks" within the meaning of the portion of heading 8301 that refers to "locks (key, combination or electrically operated)."

Home Depot's argument in support of that contention is that the term "key-operated lock" is limited to a lock in which a key operates the lock by propelling or withdrawing a bolt. That definition is quite restrictive, as it would apply only to locks such as deadbolt locks in which the key directly propels and withdraws the deadbolt rather than a locking mechanism such as the one in the subject articles, in which the key performs the unlocking and locking function by freeing or stopping the doorknob from withdrawing the bolt.

We agree with the Trade Court that the definition of a key-operated lock does not require that the key directly propel or withdraw a bolt; it merely requires that "a key produces an appropriate effect of locking or unlocking the device." The term "lock" is not defined in the HTSUS, and for terms not defined in the tariff schedule, we have held that the common and commercial meaning of the term governs. *See LeMans Corp. v. United States*, 660 F.3d 1311, 1316 (Fed. Cir. 2011); *Rollerblade, Inc. v. United States*, 282 F.3d 1349, 1352 (Fed. Cir. 2002); *Brookside Veneers, Ltd. v. United States*, 847 F.2d 786, 789 (Fed. Cir. 1988).

To determine that common meaning, courts are free to consult dictionaries and technical materials in the field. *See Rocknel Fastener, Inc. v. United States*, 267 F.3d 1354, 1356–57 (Fed. Cir. 2001). We agree with the Trade Court that the common meaning of "key-operated lock" does not require that the key directly propel and withdraw a bolt; it is enough that action by the key results in locking or unlocking the lock. *See Operate*, Webster's Third New International Dictionary 1580-81 (1986) ("to produce an effect . . . to cause to occur: bring about by or as if by the

exertion of positive effort or influence"); *Operate*, Merriam Webster's Collegiate Dictionary 827 (9th ed. 1986) ("bring about, effect—to cause to function").

Home Depot argues that the subject articles do not fall within heading 8301 because they do not possess "key-operated bolts." But "key-operated bolts" is not the term used in heading 8301; the language of the heading is "locks (key, combination or electrically operated)." Even if Home Depot is correct that a key-operated bolt refers to a mechanism in which the key directly causes the movement of the bolt, the same is not necessarily true of the broader term "key-operated lock," which merely requires that the key has the effect of triggering the locking and unlocking mechanism.

The locking and unlocking mechanism in the subject articles is clearly effected or "operated" by a key, as the key has the effect of fixing or releasing the lever that moves the bolt. Therefore, we hold that the subject articles consist in part of "key-operated locks." For that reason, the articles are prima facie classifiable under HTSUS heading 8301.

## B. Heading 8302

That, however, is not the end of the story. In addition to arguing that the locks in the subject articles are not "key-operated," Home Depot makes the affirmative argument that the articles qualify as "fittings and similar articles suitable for . . . doors," under HTSUS heading 8302, specifically those "[s]uitable for interior and exterior doors" under subheading 8302.41.60.45. The knobs at issue, Home Depot argues, are not only directly covered by the classification for "fittings" for "interior and exterior doors," but are also "similar articles" to the privacy and passage knobs that the government acknowledges are classifiable under heading 8302. The entry doorknobs, Home Depot points out, "share an identical construction and design" with the other types of doorknobs, and "are all used to grasp, open, close, and fasten a door." The subject articles differ from those products only in that they possess an

additional attribute—they can be locked and unlocked by the use of a key.

By its plain terms, heading 8302 includes "fittings and similar articles suitable for . . . doors." We agree with Home Depot that this language is broad enough to include knobsets, regardless of whether they are fitted for locking mechanisms of the type found in the subject articles.

Both parties look to the Explanatory Notes to heading 8302 to support their views. Home Depot relies on Explanatory Note (D)(7) to heading 8302, which states, in pertinent part, that heading 8302 covers "handles and knobs for doors, including those for locks or latches." The government argues that the reference to knobs, "including those for locks" indicates that "the knob component[s] of the products at issue on their own, without the incorporated keyed cylinder, would be covered by this provision," but that "knobs incorporated into a key operated lockset and imported as a whole" are not covered by the Explanatory Note. The government also relies on Explanatory Note (D)(2) to heading 8302, which states that heading 8302 covers "catches . . . bolts, fasteners, latches, etc., (other than key-operated bolts of heading 83.01) for doors."

We do not find the Explanatory Notes to be decisive in favor of either party. The reference in Explanatory Note (D)(7) to "knobs . . . for locks or latches" makes clear that the knob portion of the item is included within heading 8302, but it says nothing about the locking mechanism being included. Nor does it exclude a knob fitted with a locking mechanism. Thus, the Explanatory Note contains no clear indication of an intent to exclude from heading 8302 doorknobs containing a locking mechanism in general or a key-operated locking mechanism in particular, and no clear indication of an intent to include the entire locking knobset in heading 8302.

Similarly, Explanatory Note (D)(2) is ambiguous regarding how to classify locking doorknobs such as the

subject articles. That Explanatory Note states that "key-operated bolts of heading 8301" are excluded from heading 8302. But that language is narrower than the reference to "key . . . operated . . . locks" in heading 8301. The fact that Explanatory Note (D)(2) uses the narrower term "key-operated bolts" to define the exclusion from heading 8302, while section 8301, as noted above, uses the broader term "key . . . operated . . . locks" to define the devices falling within heading 8301, suggests that a knobset in which the lock is operated by a key, but the bolt is not directly actuated by the key, could fall within heading 8301 but not be excluded from heading 8302.[1]

Because the language of heading 8302 covers the subject articles, and the Explanatory Notes are not to the contrary, we conclude that the subject articles are prima facie classifiable under heading 8302.

## C. GRI 3(b)

In analyzing the classification issue, we begin with GRI 1. Under GRI 1, "when an imported article is described in whole by a single classification heading or subheading, then that single classification applies, and the succeeding GRIs are inoperative." *CamelBak*, 649 F.3d at 1364. GRI 2 states that "[t]he classification of goods consisting of more than one material or substance shall be according to the

---

[1] The Canadian International Trade Tribunal classified substantially similar products under heading 8302. *See Weiser, Inc. v. The Deputy Minister of Nat'l Revenue*, Appeal Nos. AP-98-041 and AP-98-060 (June 25, 2001). That decision is not binding on us but is entitled to respectful consideration. *See Cummins Inc. v. United States*, 454 F.3d 1361, 1366 (Fed. Cir. 2006). While we disagree with the *Weiser* court's ultimate decision, we note that the court's classification supports our finding that subject articles are covered by heading 8302.

principles of Rule 3."  GRI 3 in turn provides that when goods are prima facie classifiable under two or more headings, classification shall be effected according to the three subsections of GRI 3: GRI 3(a), 3(b), and 3(c).

GRI 3(a) states that the heading "which provides the most specific description shall be preferred to headings providing a more general description.  However, when two or more headings each refer to part only of the materials or substances contained in mixed or composite goods . . . those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods."

GRI 3(b) provides, in pertinent part, that composite goods made up of different components that "cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable."  *See La Crosse Tech., Ltd. v. United States*, 723 F.3d 1353, 1359–60 (Fed. Cir. 2013).

GRI 3(c) provides that "[w]hen goods cannot be classified by reference to 3(a) or 3(b), they shall be classified under the heading which occurs last in numerical order among those which equally merit consideration."

We conclude that GRI 3(b) governs the classification of the subject articles in this case.  As to the specificity of the description of the articles in the competing headings, we conclude that GRI 3(a) does not apply, because the two headings "each refer to part only" of the materials in the composite goods, and thus, according to GRI 3(a), the competing headings must be regarded as equally specific.  In particular, heading 8301 refers to the lock component of the subject articles, which functions to lock and unlock the door, while heading 8302 refers to the doorknob component, which functions to allow the door to be grasped, opened, closed, and latched.

Even though the doorknob handle plays a role in the locking mechanism by serving as the lever that withdraws the bolt when the device is unlocked, the doorknob and lock components are nonetheless largely separate. They consist of separate physical components and serve different purposes. The locking mechanism in the subject articles fits within the doorknob, but is not a "fitting" for a door. And the doorknob of the subject articles is not simply an improved version of a lock. To the contrary, the subject articles possess "features substantially in excess of those within the common meaning" of the term "lock." *CamelBak*, 649 F.3d at 1365 (quoting *Casio, Inc. v. United States*, 73 F.3d 1095, 1098 (Fed. Cir. 1996)); *see La Crosse*, 723 F.3d at 1359–60 ("[T]he time-related functions of the devices at issue are 'substantially in excess' of the features described in Heading 9015."). We therefore conclude that the subject articles cannot be classified exclusively as either locks under heading 8301 or metal fittings for doors under heading 8302. Instead, they must be deemed "composite goods. . . made up of different components," such that their classification is governed by GRI 3(b).

One example of an article that has been found to be a composite good under GRI 3 is the type of product that was at issue in *CamelBak Prods., LLC v. United States*, 649 F.3d 1361 (Fed. Cir. 2011). That case involved back-mounted packs that had one compartment for storing personal effects and a separate insulated compartment for storing liquid and delivering the liquid to the user in a "hands-free" fashion. The Trade Court ruled that the products were backpacks, but we disagreed. We held that the products were classifiable both under the subheading for "travel, sports, and similar bags" and under the separate subheading for "beverage bags." We therefore held that the products at issue were composite goods whose classification was governed by GRI 3(b). *CamelBak*, 649 F.3d at 1367–69.

GRI 3(b) dictates that when goods are deemed to be composite goods that fall within two different HTSUS headings, the classification is determined by which material or component gives the goods "their essential character." The inquiry into the "essential character" of a good for purposes of GRI 3(b) classification is a factual issue. *CamelBak*, 649 F.3d at 1370; *Home Depot U.S.A., Inc. v. United States*, 491 F.3d 1334, 1337 (Fed. Cir. 2007); *Structural Indus., Inc. v. United States*, 356 F.3d 1366, 1370 (Fed. Cir. 2004). Such a classification can be resolved on appeal if it is not reasonably disputable how that factual issue should be resolved, *see Arko Foods Int'l, Inc. v. United States*, 654 F.3d 1361, 1365–66 (Fed. Cir. 2011). That, however, is not the case here.

In *CamelBak*, we remanded so that the Trade Court could make the factual determination as to the "essential character" of the subject articles and make the classification determination based on its conclusion. 649 F.3d at 1369. We follow the same course here and remand to the Trade Court for further proceedings consistent with this opinion.

Each party shall bear its own costs for this appeal.

**VACATED AND REMANDED**